56 CCPA

**Application of the GENERAL TIRE & RUBBER COMPANY.**

**Patent Appeal No. 8059.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1969.

Joe E. Daniels, Liddy, Sullivan, Hart, Daniels & Baxley, New York City, (Francis J. Sullivan, New York City, of counsel) for appellant.

Joseph Schimmel, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and KIRKPATRICK,* Judges.

KIRKPATRICK, Judge.

The General Tire & Rubber Company appeals from a decision of the Trademark Trial and Appeal Board [1] refusing appellant's application [2] for registration of a mark for pneumatic tires described as consisting of three narrow white concentric rings of approximately equal width applied to the outer surface of a dark sidewall tire.

An illustration of the mark applied to a tire, in accordance with a substitute drawing filed in appellant's trademark application, follows:

The board considered the mark to be no more than ornamentation and refused registration, saying:

It is apparent that tire trim, be it wide or narrow whitewalls, thin stripe white or colored, dual striped, triple striped or even checkered, has been and is considered to be ornamental, decorative, or a means of dressing up a car rather than as a trademark indicating origin in any particular manufacturer. We agree with the Examiner of Trademarks that the subject matter of the application is not registrable.

On appeal, appellant argues that the mark is unique and distinctive of the product and should, therefore, be reg-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Leach, Waldstreicher and Lefkowitz, Members. Mr. Waldstreicher wrote the opinion, 151 USPQ 214.

2. Serial No. 192,032, filed April 27, 1964, for "Pneumatic Tires."

istrable as a trademark notwithstanding its ornamental qualities. Appellant draws attention to a decision of this court in In re Swift and Co., 223 F.2d 950, 42 CCPA 1048 (1955), which involved an application for registration of a mark comprising two, spaced, rectangular, polka dot bands encircling the exterior of a cylindrical can of household cleanser. In allowing registration of this mark, this court stated:

It is axiomatic, of course, that a trade-mark must be distinctive in order to accomplish its function of indicating the producer of the article to which it is applied, and, with particular regard to symbols and devices, should be displayed with such prominence as will enable easy recognition. That appellant's design will instantaneously be recognized by the ordinary purchaser as a pattern of polka dot banding cannot admit of serious dispute. While to some extent it may thus be considered a common-place design, we believe it is distinctive and does not retain its purely abstract significance as a common and merely ornamental design when applied in its particular form to the label of a can of household cleanser. We think a definite and lasting impression will be created by use of the design in association with appellant's product whereby the average consumer will regard it as an unmistakable, certain, and primary means of identification pointing distinctly to the commercial origin of such product. * * *

Appellant argues that the presently considered mark comes within the language of the above quoted portion of Swift and that we should therefore be guided by that decision.

Appellee, however, takes the position that the present situation more closely resembles that faced by this court in In re Burgess Battery Co., 112 F.2d 820, 27 CCPA 1297, (1940). The mark therein, sought to be registered, comprised alternating black and white stripes applied to the exterior of dry batteries and flashlight cases. In affirming the refusal of

trademark registration, this court stated:

We think it is apparent from the record that appellant's alleged trademark is a mere "dress" which gives a distinctive external appearance to appellant's goods; that it is such distinctive appearance which is recognized by "some" of the purchasing public as indicating appellant's goods; and that appellant's design is merely a colored label or dress of black and white alternating stripes, the office of which (design) is not to point out distinctly the origin or ownership of the articles to which the label is affixed. * * *

In resolving the opposing positions taken by the parties, we find significant the following quoted portion of the Commissioner's brief:

However, white stripes are so common on the sidewalls of tires as to have created in the minds of purchasers a type of tires known as whitewalls. This situation does not exist as to white stripes placed on containers or other articles. * * *

This, it seems to us, reaches the heart of the matter. The general public, it is well known, has long been familiar with whitewalls as a dress or ornamentation for tires. It therefore seems to us that a typical purchaser, having the idea that whitewall indicia is primarily for ornamentation, would be more likely to consider a 3-ring whitewall as just a refinement of this general ornamental concept, rather than as a trademark. This it seems distinguishes the present situation from Swift because, although Swift's two spaced polka dot bands might be considered a special species of polka dot banding, there was no general understanding of the public in Swift that polka dot banding, even in a single band, was a commonly adopted and well known form of ornamentation for cylindrical containers for household commodities.

For this reason, it seems to us that the present situation more nearly resem-

bles that present in *Burgess* where the insignia was considered to be merely ornamentation. We therefore affirm the decision of the board.

Affirmed.