**Application of SOCCER SPORT SUPPLY COMPANY, INC.**

**Patent Appeal No. 74-550.**

United States Court of Customs and Patent Appeals.

Jan. 9, 1975.

Evelyn M. Sommer, New York City, atty. of record, for appellant; Murray Schaffer, New York City, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from a decision of the Trademark Trial and Appeal Board, abstracted at 180 USPQ 527 (1973), affirming the refusal of registration on the

principal register of appellant's design mark for soccer balls:[1]

We affirm.

■ The board based its decision on the mark being mere ornamentation,[2] finding that appellant had not promoted its design as a trademark and that others used similar designs for their soccer balls.

Appellant's evidence includes copies of advertisements in sales brochures, catalogs, and various publications; a portion of a license agreement with Rexall Drug and Chemical Company; three affidavits of college or public school soccer coaches; and one affidavit of a retailer of soccer equipment. Each affidavit recites that the affiant "has been familiar with the appearances and designs by which various producers have sold soccer balls" and associates appellant's design only with appellant. Some of the advertisements and the license agreement indicate that appellant has a design patent on at least a related design, but the design patent is not of record.

Appellant argues that the mark consists of differently colored pentagons, while the solicitor urges that only black and white are indicated. We find it unnecessary to decide this issue, but note appellant's statements in the record that the mark is a black and white design and point out that it would have been a simple matter for appellant to have clearly stated its intentions in the application. See In re Data Packaging Corp., 453 F.2d 1300, 59 CCPA 776 (1972); TMEP 807.06(a).

## OPINION

■ An ornamental design can be inherently distinctive if it is arbitrary and distinctive and if its principal function is to identify and distinguish the source of the goods to which it is applied, ornamentation being merely incidental. In re Swift & Co., 223 F.2d 950, 42 CCPA 1048, (1955); In re Esso Standard Oil Co., 305 F.2d 495, 49 CCPA 1351 (1962). However, a design which is a mere refinement of a commonly-adopted and well-known form of ornamentation for a class of goods would presumably be viewed by the public as a dress or ornamentation for the goods. In re General

---

1. Application serial No. 268,106, filed March 31, 1967, alleging first use in commerce in January, 1963.

2. Neither the opinion nor the briefs of the parties specify what section(s) of the statute is relied upon. However, both parties argue the issues of whether the mark is inherently distinctive or has acquired secondary meaning. If the mark is neither *inherently* distinctive nor possessed of secondary meaning (i. e., has become distinctive), it would not be a "trademark" which the owner may register in the Patent Office under section 1 of the Lanham Act (15 U.S.C. § 1051). Nor would it meet the requirements of the preamble of section 2 (15 U.S.C. § 1052)—

No *trade-mark* by which the goods of the applicant may be *distinguished* from the goods of others shall be refused registration on the principal register on account of its nature unless . . .. [Emphasis supplied.]

and of the definition of "trademark" in section 45 (15 U.S.C. § 1127)—

The term "trade-mark" includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others.

Section 2(f) (15 U.S.C. § 1052(f)) permits registration of a mark which, although not inherently distinctive, "has become distinctive of the applicant's goods in commerce."

Tire & Rubber Co., 404 F.2d 1396, 56 CCPA 867 (1969). Especially would this be so when such design is applied repetitively to the entire surface of the goods.

■ The record does not establish that appellant's design is arbitrary and distinctive. Rather, it demonstrates that similar, if not identical, designs are used as ornamentation on soccer balls manufactured by others; also, that appellant's design is a repetitive one applied to the entire surface of a soccer ball. Accordingly, we conclude that the design is not inherently distinctive.

■ Appellant's design patent, without more, does not alter our conclusion. See In re World's Finest Chocolate, Inc., 474 F.2d 1012 (CCPA 1973). Nor do we agree with appellant's argument, citing that case, that it was error for the board to rely upon advertisements of competitors because appellant had no burden to negative or overcome the fact that other sellers use similar designs. That case merely held that an applicant has no burden to ascertain *whether* others employ a similar design, "at least in the absence of some probative evidence to the effect that they are." Here, the evidence submitted by the examiner is probative.

■ Although appellant's mark is not inherently distinctive, it would nevertheless be registrable under section 2(f) if it "has become distinctive" of appellant's goods.[3] However, the evidence is not persuasive of such a conclusion. The advertisements of record do not support an inference of distinctiveness inasmuch as the evidence fails to disclose information from which the number of people exposed to the design could be estimated—such as circulation of the

publications in which the advertisements appear, advertising expenditures, number of advertisements published, volume of sales of the soccer balls, and the like. Also, as noted by the board, such advertisements show appellant's design coupled with the marks "WORLD DOT," "WORLD CUP," or "TEL–STAR." Appellant makes the point that two trademarks can be used together, but appellant's problem is that the advertisements (e. g., those with appellant's soccer balls pictured alongside others having a different design) provide no indication of a nexus between appellant's design per se and a single source. See In re Data Packaging Corp., supra.

Appellant argues that the license agreement with Rexall shows that the design is actively promoted as a trademark and is so viewed by the trade. The license agreement is of little probative value, however, inasmuch as it is incomplete and does not indicate the extent and manner of use of the design by Rexall.

■■ Finally, appellant relies heavily upon the affidavits, arguing that the affiants are both purchasers of soccer balls and "professionals" whose voices are equivalent to a large class of purchasers. The solicitor responds that the affidavits are entitled to little weight because they are "form paragraph affidavits" and are not from the "purchasing public." That the affidavits were obviously drafted by appellant's attorney does not justify ignoring them. In re Data Packaging Corp., supra. Moreover, the soccer coaches would be expected to be purchasers of soccer balls and, therefore, do constitute a segment of the purchasing public. The affidavit of the retailer,

---

**3.** This court has pointed out that the judicially developed concept of "secondary meaning," codified by section 2(f) (15 U.S.C. § 1052(f)), relates to descriptive, geographically descriptive, or surname marks which earlier had a primary meaning which did not indicate a single source and were, therefore, unregistrable because of section 2(e). Coca-Cola Co. v. Seven-Up Co., 497 F.2d 1351 (CCPA 1974). Additionally, section 2(f) has been applied to permit registration of a mark consisting solely of a design and, therefore, not within the purview of section 2(e). In re· Schenectady Varnish Co., 280 F.2d 169, 47 CCPA 1156 (1960). This is not to suggest that generic and functional marks which have become distinctive are registrable under section 2(f) since registration of such marks is barred for reasons of public policy. In re Deister Concentrator Co., 289 F.2d 496, 503–504, 48 CCPA 952, 965–966 (1961).

which states that *he* associates appellant's design only with appellant, should also be considered for what might be inferred about consumer reaction. See In re Hollywood Brands, 214 F.2d 139, 41 CCPA 1001 (1954). However, we cannot agree with appellant that the affiants are equivalent to a large class of purchasers. Giving due consideration to the four affidavits, they do not establish an association of appellant's design with a single source by other than a small number of purchasers.

In view of the foregoing, we hold that appellant's design mark was properly refused registration on the principal register.

The decision of the board is affirmed.

Affirmed.