THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
January 11, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Lululemon Athletica Canada Inc.
_____

Serial No. 77455710
_____

Ann K. Ford, Thomas E. Zutic and David M. Kramer of DLA Piper LLP, for Lululemon Athletica Canada.

Ellen J.G. Perkins, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).
_____

Before Seeherman, Ritchie, and Wolfson, Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

Lululemon Athletica Canada Inc., applicant herein ("applicant"), seeks registration on the Principal Register of the design shown below for "hooded sweat shirts; jackets; coats," in International Class 25:[1]

---

[1] Serial No. 77455710, filed on April 23, 2008.



The description states: The mark consists of a single line in a wave design that is applied to the front of a garment. The dotted lies [sic] showing the outline of a garment does not form part of the mark, but is used only to show placement of the mark.

The trademark examining attorney refused registration pursuant to Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§ 1051, 1052, and 1127, on the ground that applicant's

design is merely ornamental as applied to the goods being offered.  The application was originally filed pursuant to Section 1(a), and claiming a priority filing date under Section 44(d).  On May 11, 2010, after receiving a final refusal, applicant responded by, among other things, amending the filing basis to rely instead on Sections 1(b) and 44(e).  Applicant did not amend the application to submit a claim, either directly or in the alternative, that the design has acquired distinctiveness and is registrable under section 2(f).  The examining attorney issued a subsequent final Office action continuing the refusal.

Applicant made a timely appeal of the refusal.  Both applicant and the examining attorney filed briefs.

### ORNAMENTATION

This case presents the question of whether the public would perceive the wave design as an indicator of source (*i.e.*, a trademark) or, instead, merely as a form of decoration or ornamentation.  Absent a showing that ornamental or decorative matter is inherently distinctive or has acquired distinctiveness as to the goods in the application, there is another way that an applicant can show that such matter serves as a trademark:  by showing that the applicant has used or registered the design in a non-

3

ornamental manner for other goods or services, see TMEP §
1202.03(c) (October 2012).

### Inherent Distinctiveness

"An ornamental design can be inherently distinctive if
it is arbitrary and distinctive and if its principal
function is to identify and distinguish the source of the
goods to which it is applied, ornamentation being merely
incidental.  However, a design which is a mere refinement of
a commonly-adopted and well-known form of ornamentation for
a class of goods would presumably be viewed by the public as
a dress or ornamentation for the goods."  *In re Soccer Sport
Supply Co.*, 507 F.2d 1400, 184 USPQ 345, 347 (CCPA 1975)
(citations omitted); *see also, In re Chippendales USA, Inc.*,
622 F.3d 1346, 96 USPQ2d 1681, 1687 (Fed. Cir. 2010) ("cuffs
and collar" costume of male exotic dancers was mere
refinement of a form of ornamentation in exotic dancing
industry); and *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*,
568 F.2d 1342, 196 USPQ 289, 291 (CCPA 1977) (applying the
relevant factors to a design feature of a mark).

In considering whether matter is ornamental, or whether
it inherently functions as a mark, relevant considerations
include the commercial impression made by the design, the
relevant practices of the trade, and evidence of
distinctiveness, if applicable.  *See, e.g.*, *Chippendales*, 96

USPQ2d at 1687-88 (citing potentially relevant factors in determining whether a costume design mark is inherently distinctive); *Soccer Sport Supply*, 184 USPQ at 347 (where competitors use similar pentagonal panels on soccer balls as ornamentation, applicant's use of such panels was not inherently distinctive); *In re Gen'l Tire & Rubber Co.*, 404 F.2d 1396, 160 USPQ 415, 417 (CCPA 1969) (white stripes are so common on the sidewalls of tires that the general public will likely view the claimed three concentric stripes "as just a refinement of this general ornamental concept, rather than as a trademark"); *In re Burgess Battery Co.*, 112 F.2d 820, 46 USPQ 39, 40 (CCPA 1940) (the consuming public will likely view alternating, repeating stripes on batteries to be ornamentation and not an indicator of source); *cf. In re Swift & Co.*, 223 F.2d 950, 106 USPQ 286, 289 (CCPA 1955) (although polka dots are a common form of ornamentation, polka-dotted banding on spray can for a cleaning product was inherently distinctive and distinctly pointed to the origin of the product); *see also* TMEP § 1202.03; J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §7:24 (4th ed. 2012).

Applicant argues that the design is not merely ornamental because (1) the commercial impression is of a distinctive design; and (2) use by competitors of similarly

large marks on their clothing shows that consumers would perceive applicant's design as being a mark rather than as merely ornamental.

The examining attorney, on the other hand, argues that the design is not inherently distinctive and instead is merely ornamental because (1) due to its large size, consumers will not perceive it as a mark when used on the "hooded sweat shirts; jackets; coats" for which applicant seeks registration; and (2) third-party registrations show that similar shapes and designs are registered on the Supplemental Register or with a claim of acquired distinctiveness under Section 2(f).[2]

In determining whether a design is inherently distinctive or merely ornamental, we have found it helpful to consider various aspects of designs and shapes, stating repeatedly, "we must consider the size, location and dominance of the designs in determining the commercial impression of designs."  *In re Right-On Co. Ltd.,* 87 USPQ2d 1152, 1156 (TTAB 2008) (finding pocket stitching that spans both back pockets of jeans to be merely ornamental), *citing In re Dimitri's Inc.*, 9 USPQ2d 1666, 1667 (TTAB 1988)

---

[2] The parties did not raise the issue of whether the applied-for mark qualifies as product design or trade dress.  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065 (2000); *In re Slokevage*, 441 F.3d 957, 78 USPQ2d 1395 (Fed. Cir. 2006). Accordingly, we decline to address that issue.

(finding applied-for matter consisting of large size message and design suggestive of ornamentation).

The Board has found various shape designs to be inherently distinctive and not ornamental. Some examples include the following:



for "electrical toasters, coffeemakers, water kettles and tea brewers." *In re Sunbeam Corp.,* 120 USPQ 304 (TTAB 1959);



for "a flavoring syrup, a frozen confection, a fruit or syrup topping for ice cream and ice milk, and for flavor

ingredients for the making of ice cream or ice milk mixes."

*In re Dairy Queen of Georgia, Inc.*, 134 USPQ 136 (TTAB 1962); *see also Vuitton et Fils, S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 210 USPQ 351, 357 (9th Cir 1981), finding

> "dark brown, vinyl-impregnated canvas, bearing an arrangement of the initials 'LV' superimposed one upon the other and surrounded by three floral symbols. The design is in a contrasting mustard color"

to be "distinctive" for "luggage and handbags."

In the present case, the examining attorney's main concern with the design in the application appears to be its size. In this regard, the examining attorney submitted evidence of third-party registrations showing marks covering large areas of clothing that were either registered on the Supplemental Register or were registered with a showing of Section 2(f) acquired distinctiveness. Among these, the most relevant are the following registrations on the Supplemental Register:

> Registration No. 2037960 describing "pleat of fabric which runs from the shoulder to the cuff on each sleeve" for "shirts";

> Registration No. 3403886 describing "pocket, horse shoe shaped on the bottom and flat across the top" for, among other things, "jackets";

and the following on the Principal Register with a Section 2(f) claim of acquired distinctiveness:

Registration No. 2980286 describing "shape of the seam which extnds [sic] vertically from either side of the collar along the front of the garment and then curiving [sic] horizontally to the lower side seam of the garment in a distinctive "J" shape" for "cardigan sweaters."

Applicant, on the other hand, has submitted evidence of third-party use of marks displayed in large size, to show that consumers would perceive such a design as not merely ornamental.  Examples include the following:









It may have once been the practice in the clothing industry to limit logos to small sizes in discrete areas rather than to have them "emblazoned" across a garment. *See* discussion in TMEP § 1202.03(a). Based on the evidence reproduced above, however, we find that such is no longer the industry practice, or at least no longer the only one. *Cf. Safer Inc. v. OMS Investments Inc.,* 94 USPQ2d 1031,

1038 (TTAB 2010) (recognizing that the Board must adapt its rules to changes in technology). Accordingly, we reject a *per se* rule regarding registrability based on the size of a mark on clothing. Rather, in considering the commercial impression of marks of this nature, the size of the mark is one consideration along with others, and the registrability of each mark must be determined on a case-by-case basis. *See, e.g., CITC Industries, Inc. v. Levi Strauss & Co.*, 216 USPQ 512 (TTAB 1982)("We are not saying that a symbol or a design covering the surface of a product cannot perform a trademark function or that it somehow loses its origin-indicating property when it is so used"); *citing Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 210 USPQ at 357.

In this case, nonetheless, we find that applicant's wave design is rather simple and looks like piping, which, unlike the highly stylized marks depicted above, is likely to be perceived by the public merely as ornamental.[3] Accordingly, the overriding commercial impression of this large-size applied-for design is that of ornamentation.

---

[3] "Piping" is a decorative line across a garment. *See* relevant definition in American Heritage of the English Language (4th ed. 2010) "a pipelike fold of material with which edges or seams are trimmed." The Board may take judicial notice of dictionary definitions. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 213 USPQ 594 (TTAB 1982), *aff'd* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

*Secondary Source*

Not every ornamental design will be considered *merely* ornamental if it is also recognizable as a trademark. As we have previously explained:

> It is a matter of common knowledge that T-shirts are "ornamented" with various insignia ... or ... various sayings such as "Swallow Your Leader." In that sense what is sought to be registered could be construed to be ornamental. If such ornamentation is without any meaning other than as mere ornamentation it is apparent that the ornamentation could not and would not serve as an indicia of source. Thus, to use our own example, "Swallow Your Leader" probably would not be considered as an indication of source

> The 'ornamentation' of a T-shirt can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source. Thus, the name 'New York University' and an illustration of the Hall of Fame, albeit it will serve as ornamentation on a T-shirt will also advise the purchaser that the university is the secondary source of that shirt.

*In re Olin Corp.*, 181 USPQ 182, 182 (1973) (quoted in TMEP § 1202.03(c) (referring to such wording or designs as indicating a "secondary source")).[4] Applicant also argues

---

[4] The terminology "secondary source" should not be confused with the synonym for acquired distinctiveness, "secondary meaning." In the context of an ornamentation refusal, "secondary source" simply means that the use of the design or words would be perceived by the consumer as an indicator of source due to the applicant's prior use or registration of the mark for other goods or services (not the applied-for goods). The TMEP gives examples such as the names of colleges (known for educational services), or a design mark used in connection with skis, emblazoned on

that it has used the same mark as the applied-for mark on related goods and services, thereby showing that consumers will perceive it as a trademark here.[5]  Applicant's evidence includes images of use on a storefront, Christmas ball ornaments, a shopping bag, a luggage bag, a gift card, a wool cap, a jacket, a bamboo yoga brick, a dense foam brick, a yoga mat, a skidless towel, hairbands, a running cap, and a headband.  Some examples of applicant's prior use are set forth in the following images:

---

shirts or sweatshirts.  *See* TMEP § 1202.03(c), citing *In re Olin Corp.,* 181 USPQ 182.  In both cases, the consumer would understand the mark on clothing to refer to the applicant's previously established mark for other goods or services.  In contrast, "secondary meaning" concerns whether matter that is not inherently distinctive has, through substantially exclusive use on the goods in question, been transformed, in the eyes of consumers, into a source indicator.

[5] Applicant originally filed specimens of use, but, as previously noted, then changed the basis of its application to  intent-to-use and Section 44(e), and did not later provide context for the specimens.







The examining attorney asserts that applicant's argument that its design is distinctive due to its use on and registration for other products is not persuasive because these other uses and registrations are not for the same mark.

We agree with the examining attorney.  We note that the evidence submitted by applicant of prior use on related goods and services shows a highly stylized wave design confined in and highlighted by a contrasting-hued circle, as shown in applicant's prior registration (shown below) for "clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats," in International Class 25, which was also submitted, and relied upon, by applicant:[6]



Besides being highlighted by a contrasting circle, applicant's prior uses and registration clearly show the sides of the wave as both thicker and closer together (i.e., with a more narrow opening) than the wave design in the application.  Also, the design in applicant's prior mark is not of uniform thickness, but rather tapers at the

---

[6] Registration No. 2,460,180, registered June 12, 2001.  Sections 8 and 15 affidavits accepted and acknowledged.  Renewed.  The only exception is the use of the mark on Christmas ball

ends, whereas the design in the application is uniformly a thin line throughout.



In short, the wave design that applicant uses in other contexts is not the same mark that applicant now seeks to register.  Accordingly, these past uses and registration cannot be used by applicant to show that the design in the application is distinctive, rather than ornamental, because

---

ornaments, but in that case the ornament itself creates the circle on which the wave appears.

they do not show use of the same mark *Cf. In re Dial-A-Mattress Operating Corp,* 240 F.3d 1341, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001) ("A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark.") *citing Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 926 F.2d 1156, 1159, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991); *In re Flex-O-Glass, Inc.,* 194 USPQ 203, 205-206 (TTAB 1997) ("[P]ersons exposed to applicant's registered mark ... would, upon encountering [applicant's yellow rectangle and red circle design] ... , be likely to accept it as the same mark or as an inconsequential modification or modernization thereof .... [A]pplicant may 'tack on' to its use of the mark in question, the use of the registered mark ... and therefore may properly rely upon its registration in support of its claim of distinctiveness herein."); and *Morehouse Mfg Corp. v. J. Strickland & Co.,* 407 F.2d 881, 160 USPQ 715 (CCPA 1969) ("As a matter of law, the opposer cannot be damaged, within the meaning of section 13 of the statute, by the issuance to the applicant of a second registration where applicant already has an existing registration of the same mark for the same goods."). Because the prior uses and the applied-for mark do not create the same commercial impression, such that the

consumer would consider them both the same mark, we find that consumers will not view the wave design on applicant's clothing as identifying a secondary source for the goods, and therefore are not likely to perceive the applied-for wave design as performing a source-identifying function.[7]

**CONCLUSION**

Although we find that there is no *per se* rule excluding a large-size mark from registration on the Principal Register, applicant has not shown that the design in the application is inherently distinctive.  In making this determination, we have considered the commercial impression created by the mark, the relevant practice in the industry, and any distinctiveness in determining whether applicant's applied-for design would be perceived as a mark or merely as ornamentation for the goods.  We also find that applicant has not shown that its prior use is of the same mark such as to show that the design in the application would be regarded by consumers as a trademark. Accordingly, without a showing of acquired distinctiveness, we find that the design in the application would be perceived by consumers as merely ornamental.

---

[7] Alternatively, applicant argues that the ornamentation refusal is premature in this intent-to-use application.  However, the Board has found that such refusal may be made if a well-defined drawing is ornamental "on its face."  *In re Right-On Co.,* 87 USPQ2d at 1157.

18

**Decision**: The refusal to register is affirmed.