This Opinion Is a
Precedent of the TTAB

Mailed: September 21, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Fantasia Distribution, Inc.*

————

Serial No. 86185623

————

James Denison, Esq.
    for Fantasia Distribution, Inc.

April Roach, Trademark Examining Attorney, Law Office 115,
    John Lincoski, Managing Attorney.

————

Before Kuhlke, Masiello, and Lynch,
    Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.   Background

Fantasia Distribution, Inc. ("Applicant") seeks registration on the Principal Register of the repeating-pattern trade dress mark shown below for "Electronic hookahs" in International Class 34:



The mark is described as follows: "The mark consists of the design of repeating rows of diamonds applied to the goods which appear on the lower third of the cylinder of the hookah device; the dotted lines indicate the placement of the mark and are not claimed as [a] feature of the mark."[1]

The Examining Attorney refused registration under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, on the ground that the proposed mark constitutes merely ornamental matter and does not function as a mark for the goods. Although Applicant maintained that its proposed mark is inherently distinctive, Applicant claimed, in the alternative, acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f). The Examining Attorney deemed the evidence of acquired distinctiveness insufficient.

We note that the Examining Attorney's ornamental refusal issued prior to the June 2015 examination guide, later incorporated into the TMEP, specifically concerning proposed repeating pattern marks. *See* TMEP § 1202.19 (April 2016). Regardless, the essence of the Examining Attorney's refusal and analysis of the registrability and ornamental nature of Applicant's repeating-diamond pattern is consistent with the guidance therein, which addressed potential lack of inherent

---

[1] Application Serial No. 86185623 was filed February 5, 2014, based upon use in commerce under Section 1(a), 15 U.S.C. § 1051(a).

distinctiveness because "repeating patterns often serve an ornamental function in various contexts." TMEP § 1202.19(e)(i).

After the Examining Attorney made the refusal final, Applicant appealed. We affirm the refusal to register on the ground that the proposed mark fails to function as a trademark because it is a non-distinctive, merely ornamental pattern that has not acquired distinctiveness.

II.    Failure to Function as a Trademark

Section 45 of the Trademark Act defines a "trademark" in relevant part as "any word, name, symbol, or device, or any combination thereof used by a person. . . to identify and distinguish his or her goods. . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public." *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010). Subject matter that is perceived as merely decorative or ornamental does not identify source and thus fails to function as a mark.

Repeating patterns frequently serve an ornamental function in various contexts to decorate goods, such that consumers would not be predisposed to equate the repeating patterns with source. In *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 213 (2000), the Supreme Court, addressing the issue of trade dress, explained that neither color nor product design (as opposed to product packaging) may be inherently distinctive because they almost invariably "render the product itself more useful or

appealing," and consumers therefore are not predisposed to view them as source-indicating. By analogy, repeating patterns often appear on goods to render the products more visually appealing and, in those situations, would not be considered inherently distinctive. Thus, while we do not absolutely foreclose the possibility that an inherently distinctive repeating pattern may function as a source-indicator, in most cases a repeating pattern on a product serves a decorative purpose and is not inherently a source identifier. "'[N]ot every designation that is placed or used on or in connection with a product necessarily functions . . . as a trademark for said product; not every designation adopted with the intention that it performs a trademark function and even labeled as a trademark necessarily accomplishes that purpose. . . .'" *In re Hulting*, 107 USPQ2d 1175, 1177 (TTAB 2013) (quoting *Am. Velcro, Inc. v. Charles Mayer Studios, Inc.*, 177 USPQ 149, 154 (TTAB 1973)); *accord In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976); *In re Standard Oil Co.*, 275 F.2d 945, 125 USPQ 227, 229 (CCPA 1960). A pattern may function as a mark only "if it is arbitrary and distinctive and if its principal function is to identify and distinguish the source of the goods to which it is applied. . . ." *See In re Soccer Sport Supply Co.*, 507 F.2d 1400, 184 USPQ 345, 347 (CCPA 1975).

A. Inherent Distinctiveness

To assess the potential inherent distinctiveness of a repeating pattern appearing on a product, such as the mark in this case, we follow *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 196 USPQ 289 (CCPA 1977), adapting its factors to this context as appropriate, including:

- the nature of Applicant's goods and whether there is an industry practice of ornamenting such goods, *see In re Lululemon Athletica Canada Inc.*, 105 USPQ2d 1684, 1689 (TTAB 2013) (considering commercial impression and industry practice in assessing inherent distinctiveness of a design appearing on clothing); *see also Seabrook Foods*, 196 USPQ at 291 (to assess the inherent distinctiveness of a design, considering *inter alia*, whether a design is "a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods");

- the nature of the pattern, including whether any element of the pattern might be perceived as source indicating if it were standing alone;

- how common the pattern is, whether it is composed of common or unusual repeating shapes, whether such shapes repeat in a common or unusual manner, and whether the overall pattern is similar to, or a mere refinement or variation of, a common or well-known form of ornamentation, *see id.* (to assess the inherent distinctiveness of a design, considering *inter alia*, "whether it was a 'common' basic shape or design," "whether it was unique or unusual in a particular field," and "whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation");

- the manner in which the repeating pattern appears on the product, including the size and location of the pattern on the product and how much of the product is covered by the pattern; and

- whether the pattern creates a distinct commercial impression apart from any accompanying wording and design elements, *see id.* (in assessing inherent distinctiveness of the design portion of a composite mark, considering *inter alia*, "whether it was capable of creating a commercial impression distinct from the accompanying words").

Particular factors may be dispositive as to the lack of inherent distinctiveness, without the need for a showing under each factor. *See In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1684 (Fed. Cir. 2010) (in applying the *Seabrook* test, holding that satisfying any of the first three factors applicable in that case would render the mark not inherently distinctive).

Turning to Applicant's applied-for pattern and whether it is inherently distinctive, in making that assessment, we consider the specimens as well as "other evidence bearing on the question of what impact [A]pplicant's use is likely to have on purchasers and potential purchasers." *See In re Safariland Hunting Corp.*, 24 USPQ2d 1380, 1381 (TTAB 1992). In this case, the consumers would include members of the general public. One of Applicant's specimens, below,[2] shows the repeating diamond pattern appearing at one end of the electronic hookahs.

---

[2] February 5, 2014 Application at 3.



The specimen shows that Applicant's electronic hookahs display near the mouthpiece the word FANTASIA in relatively large type, with ELECTRONIC HOOKAH appearing in smaller print beneath it, next to a logo that includes the stylized word FANTASIA and a design of a traditional hookah pipe. The middle portion of the devices features varying wording and colored designs that appear to correspond to the flavor of the particular electronic hookah. For example, flavors include: a mixed melon flavor named "4 Play," featuring a pink female silhouette design and pink diamond pattern; a flavor of Brazilian Curacao fruit with a citrus twist named "Adios M@#%+&!," featuring a blue cocktail design and blue diamond pattern; and a blueberry mint flavor named "Magic Dragon," featuring a blue and orange dragon

design and blue diamond pattern.[3] The color of the wording and design corresponding to each flavor matches the color of the diamond pattern appearing on the end of the electronic hookah.

Applicant also submitted evidence of third-party webpages promoting and offering its goods, an example of which is shown below.[4]

---

[3] Although the full designs and wording for each flavor are not visible on this specimen, Applicant submitted other evidence of online promotions and offers to sell its electronic hookahs that show the designs and wording and identify the flavors. *See* February 5, 2015 Response to Office Action at 7-8, 12-13, 15, 23, 26, 30-31 (webpages identify particular flavors and show the corresponding e-hookah and packaging for the flavor).

[4] February 5, 2015 Response to Office Action at 10; *see also id.* at 14 (an eBay listing for Applicant's electronic hookahs showing the same packaging).



The webpage includes an image of Applicant's electronic hookahs as they are

packaged for sale, although, notably, the applied-for mark is not visible through the

transparent window of the box in which the goods are sold. The transparent panel of

the box reveals only the portion of the product nearest the mouthpiece (*i.e.*, the end opposite from where the diamond design appears), where the FANTASIA name and logo appear.

The Examining Attorney introduced evidence of three other brands of electronic hookahs with patterns placed at one end of the hookah device, in a similar manner as Applicant's diamond pattern. First, the Beamer e-hookahs, as displayed below, show an arrangement of wording and design elements very similar to that of Applicant's product and feature multi-colored swirls on the opposite end of the device from the mouthpiece.[5] Nearest the mouthpiece, it features the brand name BEAMER in relatively large, stylized typeface. Next to the brand name, it displays colored design elements that appear to relate to the flavor, followed by the name of the flavor. Finally, as with Applicant's product, the end of the product is decorated, in this example with multi-colored swirls coordinated with the colors for the flavors.

---

[5] May 19, 2014 Office Action at 2 (http://www.hookah-shisha.com/p-16644-beamer-e-hooka-nicotine-free-ehookah.html).



The "Platinum Puffs" e-hookahs appearing below show the same general use and arrangement of wording, designs, and decorative elements.[6] The name PLATINUM PUFFS is nearest the mouthpiece, along with a logo-type design element. Toward the other end, each e-hookah has a graphic design visually depicting its flavor. At the far end, there is a decorative element that features a gray background with three parallel stripes in colors matching the designated color for each flavor.

---

[6] *Id.* at 5-6 (http://www.platinumepuffs.com/disposable-e-hookah).



Finally, the "Bentley Grape White Rhino Blacklight" e-hookah devices, below, also feature a similarly formatted trade dress.[7] The brand name BLACKLIGHT appears in large print at one end. Next appears the company name BENTLEY in a contrasting band around the circumference of the product. Finally, at the opposite end, there is a decorative element that appears to be a repeating pattern of interwoven traditional hookah designs.

---

[7] *Id.* at 7-8 (http://www.hookahcompany.com/bentley-grape-white-rhino-blacklight-e-hookah-15620-prd1.htm). The image shown of the devices is split between two pages in the record, which we have joined in the excerpt below.



The Examining Attorney contends that this evidence demonstrates that the placement of ornamental designs "toward the bottom of electronic hookah devices is a common practice in the industry,"[8] and that consumers would view such designs "as a decorative feature of the goods rather than as a trademark."[9] Applicant counters that the Examining Attorney failed to meet her burden to establish lack of inherent distinctiveness, and claims that the third-party e-hookah designs are completely different from its diamond pattern. According to Applicant, the Examining Attorney must prove that *its* diamond pattern is a common one in the industry, or at least that it constitutes a mere refinement thereof.

---

[8] 6 TTABVUE 5.

[9] *Id.*

As to Applicant's contention that the evidence must specifically show other diamond patterns placed on electronic hookahs, such a showing is unnecessary if, for other reasons, the public would not perceive the mark as an indicator of source. While we consider how common the pattern is, that is but one of numerous factors in the inherent distinctiveness analysis, and it is not dispositive. *See In re Chippendales USA, Inc.*, 96 USPQ2d at 1684. As noted in *In re E S Robbins Corp.*, 30 USPQ2d 1540, 1542 (TTAB 1992), although "applicant's applied for design may be unique in the sense that it is a 'one and only,' the record demonstrates that said design is not unique in the sense it has an 'original, distinctive, and peculiar appearance." *Cf. See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (noting that the law does not permit "anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first."); *In re Bailey Meter Co.*, 102 F.2d 843, 41 USPQ 275, 276 (CCPA 1939) ([being] "the first and only one to adopt and use the mark sought to be registered does not prove that the mark is not descriptive"); *In re Preformed Line Products Co.*, 323 F.2d 1007, 139 USPQ 271, 273 (CCPA 1963). Even if Applicant currently is the only user of a diamond pattern on e-hookahs, this fact alone does not imbue the design with source-indicating significance, where Applicant's design merely repeats an ordinary shape in an unremarkable pattern and places it on the goods in an unremarkable way.

Applying the factors set out above, as discussed more fully below, we conclude that Applicant's repeating diamond pattern is not inherently distinctive. One of the Internet advertisements Applicant submitted states, "Fantasia Diamond Hookah

Pens are designed to look great."[10] We find that the diamond pattern plays a significant role in giving the devices an attractive appearance, and that consumers would not be predisposed to view this decorative element as source-indicating. *See In re Chippendales USA,* 96 USPQ2d at 1685 (citation omitted) ("the focus of the [inherent distinctiveness] inquiry is whether or not the trade dress is of such a design that a buyer will immediately rely on it to differentiate the product from those of competing manufacturers; if so, it is inherently distinctive").

Applicant's e-hookah is crowded with wording and design elements, including the diamond pattern which blends with the other elements of the trade dress and does not make a distinct commercial impression as a source identifier. *See In re Wendy's Int'l, Inc.,* 227 USPQ 884, 886 (TTAB 1985) (finding as part of inherent distinctiveness analysis that "the design is not sufficiently unique or distinctive to create a commercial impression as a service mark separate and apart from the remainder of the matter as shown in the specimens of record"); *see also Seabrook Foods,* 196 USPQ at 291 (inherent distinctiveness of a design involved considering whether it "was capable of creating a commercial impression distinct from the accompanying words").

Also, the basic decorative nature of this repeating pattern on the e-hookah undercuts Applicant's claim that consumers would view it as inherently signifying source. *See In re Hudson News Co.,* 39 USPQ2d 1915, 1923-24 (TTAB 1996) (acknowledging that "there is no prohibition against a trade dress mark both

---

[10] February 5, 2015 Response to Office Action at 12.

functioning to indicate source and being aesthetically pleasing" but finding applicant's "pedestrian" interior décor trade dress not inherently distinctive); *see also Lululemon Athletica*, 105 USPQ2d at 1689 (finding applicant's wave design on clothing ornamental without evidence of third-party use of the same or similar wave designs, instead noting that the design was "rather simple" and like "piping"). Applicant's mark merely repeats a basic diamond shape to form a highly conventional pattern of rows and columns. *See Seabrook Foods*, 196 USPQ at 291; *Cf. In re Anton/Bauer Inc.,* 7 USPQ2d 1380, 1381 (TTAB 1988) ("common geometric shapes such as circles, ovals, triangles, diamonds and stars, when used as backgrounds for the display of word or letter marks, are not regarded as trademarks for the goods to which they are applied absent evidence of distinctiveness of the design alone"). This is not a pattern that repeats, for example, an element already recognized by consumers as source-indicating. Moreover, the diamond pattern repeats in an unremarkable way, varying only to the extent that the diamond shapes gradually increase in size in each row. The size of this pattern contributes to its ornamental effect, even though we recognize that no *per se* rule exists as to ornamentation based on the size of a design. *In re Lululemon Athletica*, 105 USPQ2d at 1689.

As shown by the other brands of electronic hookahs with colorful designs placed in a similar manner at the end of the hookah opposite the mouthpiece, Applicant's pattern is placed in a location that appears to be used often in the industry for decorative elements. *See id.* (considering industry practice in assessing inherent distinctiveness).

Applicant relies on *In re Swift & Co.*, 223 F.2d 950, 106 USPQ 286 (CCPA 1955), in support of its position that its design is inherently distinctive. As *Swift* explains, however, each case must be decided on its own facts. *Id.* at 288 ("the merits of each case of the character here presented must be individually and accordingly adjudged"). *Swift* involved a mark consisting of polka dot bands on the label of a cleanser container, and the specimen showed that the slogan "Pick the POLKA DOT package cleanser" appeared on the label with the mark, and the applicant emphasized that the slogan was used "extensively in advertising its product." *Id.* In *Swift*, the Court found that the evidence demonstrated that the repeating polka-dot design there represented "an unmistakable, certain, and primary means of identification pointing distinctly to the commercial origin of such product."[11]  *Id.* at 289. The record in this case includes nothing analogous,[12] and therefore the facts of *Swift* do not support registration in this case.

We find that Applicant's repeating diamond pattern applied to the e-hookahs would be perceived as ornamentation for the goods and not as inherently distinctive.

---

[11] We note this type of evidence of use is more commonly used to show acquired distinctiveness.

[12] Although Applicant suggests in its brief that its third-party distributors "commonly referred to [its product] as 'Diamond E Hookahs' and the 'Diamond Series' disposable e-hookahs," (4 TTABVUE at 19), the cited evidence repeatedly identifies "Fantasia" as the source and frequently refers to the goods as "Fantasia E-Hookahs" or "Fantasia Electronic Hookahs." One advertisement Applicant submitted refers to the "Diamond tip with LED light on end" (February 5, 2015 Response to Office Action at 21), suggesting that "diamond" references may be to the tip. Overall, we do not find that the evidence demonstrates recognition of the diamond pattern as a source-indicator.

B.    Acquired Distinctiveness

An ornamental design that lacks inherent distinctiveness may nonetheless be registered upon proof "sufficient to establish purchaser recognition of the … design as an indicia of origin for goods originating exclusively with applicant." *Anchor Hocking Glass Corp. v. Corning Glass Works*, 162 USPQ 288, 292 (TTAB 1969) ); *see also In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 422 (Fed. Cir. 1985) (approving USPTO practice of permitting registration of designs that appear principally to be ornamental upon proof of acquired distinctiveness). In order to obtain a registration under the provisions of Section 2(f) of the Trademark Act, Applicant bears the burden of demonstrating that its mark has acquired distinctiveness. *See In re La. Fish Fry Prods., Ltd.,* 797 F.3d 1332, 116 USPQ2d 1262, 1264 (Fed. Cir. 2015). "The kind and amount of evidence necessary to establish that a mark has acquired distinctiveness in relation to goods or services depends on the nature of the mark and the circumstances surrounding the use of the mark in each case." *In re Chevron Intellectual Prop. Group LLC*, 96 USPQ2d 2026, 2030 (TTAB 2010).

Applicant relies on the following in support of its claim of acquired distinctiveness:

- A declaration by Applicant's general counsel, Mr. James W. Denison, authenticating a still frame from a YouTube video review of Applicant's e-hookah, alleging that "the unsolicited reviewer held up the product and said, 'This is how it looks like…. See those little diamond patterns….'" The declaration further alleges that this YouTube video review displayed an indication that it had more than 3,000 hits.[13]

---

[13] February 5, 2015 Response to Office Action at 2-3, 6. In its Response, Applicant also offered to submit the actual video by mail, because of an apparently mistaken belief that "the TEAS system did not permit attachment of video files" (4 TTABVUE 20). However, the Examining

- Internet advertisements showing photos of the goods and identifying Applicant's goods as "Fantasia Diamond E-Hookahs" or "Fantasia Diamond Series E-Hookahs," also attached to Mr. Denison's declaration.[14]

- Other Internet advertisements showing Applicant's goods allegedly identified by a "Google search for Fantasia 'Diamond' electronic hookahs," also attached to Mr. Denison's declaration."[15] One such advertisement states that the device has a "Diamond tip with LED light on end."[16]

- An e-Bay listing in which, according to Mr. Denison's declaration, "the seller presented electronic hookah products resembling [Applicant's], complete with a copy of the diamond trade dress that is the subject of this application," and an advertisement wherein the same seller presents its products as Applicant's and with the diamond pattern on the e-hookah, when, according to Mr. Denison's declaration, the goods are not Applicant's.[17]

---

Attorney did not reply to this offer or advise Applicant how to submit the video. Since August 2014, multimedia evidence, including video files under 30 MB, may be attached to the TEAS Response to Office Action form. The Examining Attorney notes her objection to any consideration of the video itself, which is not included in the record, but Applicant makes clear in its brief that it only seeks consideration of the still frame and accompanying information about the video provided in Mr. Denison's declaration. Under the circumstances, we consider the still frame from the video and Mr. Denison's declaration describing a certain portion of the YouTube video, both of which were included in the record, but we cannot consider the video itself, which we do not have. *Cf. In re Planalytics*, 70 USPQ2d 1453, 1458 (TTAB 2004) (providing a link to a website does not suffice to put information in the record because of the transitory nature of the information available through the link).

[14] *Id.* at 4, 7-18 (www.southsmoke.com/pd-fantasia-diamond-e-hookah.cfm, www.hookahcompany.com/hookahblog/fantasia-e-hookah-best-electronic-hookah-pen, www.vapingcricket.com/p-15262-fantasia-diamond-e-hookah-pen.html, www.ebay.com/itm/E-Hookah-Fantasia-Diamond-Series-Disposable-electronic-hookah-pen-800-puffs-/301309855153?pt=LH_DefaultDomain_0&hash=item46277785b1.

[15] *Id.* at 4, 19-33 (www.5starhookah.com/Fantasia-Diamond-E-Hookah-FDEH.htm; www.citypuffs.com/products/fantasia-diamond-series-e-hookah-joker; radhookahpipes.com/fantasia-diamond-disposable-hookah-pen/; www.usawglasspipes.com/index.php?route=product/category&path=68; www.hookah-plus.com/categories.php.

[16] *Id.* at 21 (www.citypuffs.com).

[17] *Id.* at 4, 34-35 (www.ebay.com), 36-38 (www.dhgate.com).

Applicant characterizes its third-party promotional evidence as showing that consumers identify its products by the diamond pattern. In addition, Applicant argues that the competitor copying of the diamond design should be considered especially compelling proof that the proposed mark is recognized as source-identifying.

The Examining Attorney counters that the evidence fails to establish that consumers perceive the diamond pattern as a source indicator. She points to the relatively brief use of the mark since 2012 and the lack of advertising evidence as weighing against acquired distinctiveness. Also, she argues that the third-party webpages submitted by Applicant describe the e-hookahs, but give no indication that "the diamond design has achieved any recognition as being a distinctive feature that indicates source."[18] After reviewing and summarizing the content of each set of webpages in her brief, the Examining Attorney notes that none mention the diamond pattern "as a feature of the goods or a way to determine that applicant is the source of the goods."[19] Turning to the alleged third-party copying, the Examining Attorney contends that "evidence of intentional copying is not probative of acquired distinctiveness in the product design context,"[20] and she points out that the alleged copies are identified as "Diamond tip Fantasia E Hookah" and thus do not support

---

[18] 6 TTABVUE 7.

[19] *Id.* at 8.

[20] *Id.* at 9. However, we note that neither the Examining Attorney nor Applicant treated the applied-for mark as product design, which cannot qualify as inherently distinctive as a matter of law. *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 212-213, 54 USPQ2d 1065, 1068-1069 (2000).

Applicant's argument that the diamond pattern is the distinctive feature of its goods.[21] Finally, as to the screen capture and declaration quoting the YouTube review video, the Examining Attorney criticizes the incompleteness of Applicant's selected quotation, and notes that it merely reflects a consumer "describing a part of the appearance of the goods," rather than any source indication.[22]

We agree that, considered in its entirety, the evidence of acquired distinctiveness falls short of meeting Applicant's burden. First, while the screen capture from the YouTube review of Applicant's product and accompanying declaration evidence show that the reviewer noticed the diamond pattern, there is nothing to indicate that it is perceived as source-identifying. One may notice and comment on ornamentation without viewing it as source-identifying. The screen capture indicates that the video has a run time of over two minutes, but the declaration transcribes only one partial sentence from the video. While the record does not contain the video itself or a transcript of the entire video, we assume that Applicant submitted the screen shot and transcription excerpt it considers most persuasive to show distinctiveness. *Cf. In re Federated Dep't Stores, Inc.,* 3 USPQ2d 1541, 1542 (TTAB 1987) (where the

---

[21] Presumably because of her reference to the "single" instance of copying, Applicant lodged an objection that the Examining Attorney's argument that the copying evidence is insufficient should be deemed waived, as not having been raised during examination. 8 TTABVUE 8. While the Examining Attorney did not specifically address the copying in her final Office Action of February 26, 2015, she nonetheless stated that "the evidence and arguments provided are not sufficient to support the claim" of acquired distinctiveness. Therefore, we overrule the objection because the Office Action placed Applicant on notice regarding the Examining Attorney's position regarding the insufficiency of the Section 2(f) evidence and preserved such arguments.

[22] 6 TTABVUE 11.

Examining Attorney submitted only three of 18 articles retrieved from a database, the Board "assume[d] that the three excerpts selected provide the best support of the Examining Attorney's refusal to register available from that source"). Even the excerpted partial sentence merely points out "those little diamond patterns," without any further indication of their significance. We cannot ascertain the impact that this one mention within a two-minute video would have on consumers. Further, the number of viewings indicated, 3,000, is not large, and we have no context that indicates otherwise, such as a comparison to the overall number of purchasers of electronic hookahs. We also note in this regard that the number of viewings does not necessarily reflect unique viewers, rather than some individuals repeatedly watching the video. Overall, this evidence has minimal probative value as to acquired distinctiveness.

Turning to the Internet advertisements referred to as Exhibits 2 and 3 in Mr. Denison's declaration, we agree with the Examining Attorney that while these materials may use the word "Diamond" in reference to Applicant's electronic hookahs, they do not appear necessarily to refer to the applied-for diamond pattern. All of the references are to the "Fantasia Diamond E-Hookah [or E Hookah or hookah]" or the "Diamond Series." Also, as noted above, one advertisement indicates that "Diamond" refers to the diamond tip of the electronic hookah.[23] In addition, while the materials typically contain pictures of the goods, they do not feature any "look for" advertising, nor do they in any way highlight or tout the significance of the diamond pattern. *See*

---

[23] February 5, 2015 Response to Office Action at 21.

*In re ic! berlin brillen GmbH*, 85 USPQ2d 2021, 2023 (TTAB 2008) ("While the earpiece design is visible on the eyewear shown in applicant's print advertisements and Internet web pages, and in the celebrity photographs of record, there is nothing to indicate that the ultimate purchasers would view this particular feature as anything more than a component of the eyeglass/sunglass frame"); *Duramax Marine, LLC v. R.W. Fernstrum & Co.*, 80 USPQ2d 1780, 1796-97 (TTAB 2006) ("While the image of applicant's keel cooler is widely used, there is little evidence of 'look for' advertising or actual promotion of the logo"); *In re Edward Ski Prods. Inc.*, 49 USPQ2d 2001, 2005 (TTAB 1999) ("While the product design may be shown on each and every advertisement, there is no indication that potential purchasers would view this as more than a picture of the goods").[24]

The Internet materials also reveal some facts that detract from the claim of acquired distinctiveness. For example, they show that when Applicant's e-hookahs are sold in boxes, the transparent window in the box does not even reveal the applied-for diamond pattern. That portion of the e-hookah is covered by the opaque part of the box and cannot be seen by consumers. In general, this evidence reflects that Applicant's repeating diamond pattern does not create a distinct commercial impression apart from the other wording and designs appearing on the electronic hookahs. In addition, as noted above, the color scheme of the diamond pattern

---

[24] For examples of effective "look for" advertising, see, e.g., *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 423-24 (Fed. Cir. 1985); *In re Data Packaging Corp.*, 453 F.2d 1300, 172 USPQ 396, 398-99 (CCPA 1972); *In re Hehr Mfg. Co.*, 279 F.2d 526, 126 USPQ 381 (CCPA 1960).

changes to coordinate with the wording and design signifying the flavor of each electronic hookah. The color scheme and proximity of the pattern to the design and flavor name cause the diamond pattern to blend with these other elements of the trade dress, rather than making its own separable commercial impression as a source identifier. Overall, the advertisements do not weigh in favor of acquired distinctiveness. *See In re McIlhenny Co.*, 278 F.2d 953, 126 USPQ 138, 140-41 (CCPA 1960) (promotion of a bottle design bearing other trademarks insufficient under Section 2(f) to show that the public views the bottle design alone as a trademark); *Soccer Sport Supply,* 184 USPQ at 348 (advertising of a design along with word marks lacked the "nexus" that would tie together use of the design and the public's perception of the design as an indicator of source); *see also In re Pingel Enter. Inc.*, 46 USPQ2d 1811, 1823 (TTAB 1998) (discounting advertisements that merely showed "pictures of applicant's product" because "People do not ascribe trademark significance to everything [to which] they are exposed").

Finally, with respect to the third-party copying, because it was not limited to the diamond design, we cannot conclude that it demonstrates the source-indicating nature of the diamond pattern. The third-party copying evidence shows an eBay listing entitled "E Hookah Fantasia Diamond Series Disposable electronic hookah pen HS."[25] The additional webpage promoting the same goods also uses "Fantasia E Hookah."[26] Thus, in both instances, source-identifying wording appears along with

---

[25] February 5, 2015 Response to Office Action at 34.

[26] *Id.* at 36.

the depiction of the goods having a trade dress generally similar to Applicant's, with a variety of features including the repeating diamond pattern. Because the copying in this instance is not limited to the diamond pattern alone, it does not show that the copier perceived the diamond pattern by itself as a source indicator or believed that consumers would rely on the diamond pattern as an indicator of the source of the goods. We cannot discern the copyist's motivation to include the diamond pattern among the various features of Applicant's trade dress and use of the "Fantasia" brand name, and we therefore cannot find that the copying suggests that the diamond pattern, by itself, serves as a mark.

In view of the foregoing, we agree with the Examining Attorney's determination that Applicant's evidence, viewed separately and as a whole, failed to establish the requisite showing under Section 2(f) that its repeating pattern mark is recognized by consumers as a trademark.

**Decision**: We affirm the refusal to register under Sections 1, 2 and 45 of the Trademark Act on the ground that Applicant's proposed mark fails to function as a trademark because it is a non-distinctive, merely ornamental pattern that has not acquired distinctiveness under Section 2(f).