**Application of DATA PACKAG-
ING CORP.**

**Patent Appeal No. 8592.**

United States Court of Customs
and Patent Appeals.

Jan. 27, 1972.

Stanley Sacks, Boston, Mass. (Wolf,
Greenfield & Sacks), Boston, Mass., at-
torneys of record, for appellant.

S. Wm. Cochran, Washington, D. C.,
for Commissioner of Patents; Raymond
E. Martin, Washington, D. C., of coun-
sel.

Before WORLEY, Chief Judge, and
RICH, ALMOND, BALDWIN, and
LANE, Judges.

RICH, Judge.

This ex parte appeal [1] is from the de-
cision of the Trademark Trial and Ap-

---

[1]. The Petition of Appeal states that the
preliminaries for this appeal were taken
"pursuant to §§ 142 and 143 of Title 35
of the United States Code," which per-
tain to appeals in patent rather than
trademark cases. However, we have con-
strued the appeal as if filed pursuant to
15 U.S.C. § 1071(a), the provision gov-
erning appeals to this court in trade-
mark cases.

peal Board, one member dissenting, 161 USPQ 52 (1969), affirming the examiner's rejection of appellant's application, serial No. 222,131, filed June 28, 1965, to register on the Principal Register as a trademark for computer tape reels a particular design applied thereto. The design consists of a narrow annular band mounted on the front reel flange, adjacent to and concentric with the hub of the reel, in a color which contrasts with the reel flange. Registration was refused by the examiner "as being prohibited by Section 1 of the Trademark Statute" because the band does not function as and is not a trademark. We reverse.

Inquiring further into the examiner's reasoning, it seems that his rejection was actually based alternatively on two separate rationales. First, the examiner seems to have felt that a colored design which could appear in different colors on different goods is inherently incapable of functioning as a trademark. Second, the examiner apparently felt that appellant's mark, if it was capable of ever becoming a trademark, was so weak that it was unregistrable absent "evidence to prove that there is a customer recognition of the metal[2] ring as a trademark for the computer tape reels." Appellant submitted such evidence after protesting that none was required, but the examiner apparently concluded that it was insufficient to establish that appellant's rings were in fact functioning as a trademark.

The board affirmed by a vote of 2 to 1. The majority opinion relies principally upon International Braid Co. v. Thomas French & Sons, Ltd., 150 F.2d 142, 32 CCPA 1092 (1945), in which it is stated that

   \* \* \* the law prohibits the registration of a mark which provides for the use of *any* color as its distinguishing feature; for the reason not only that such a mark possesses no defined feature which would tend to identify the origin of the goods, but also that the registration of such a mark would endow its owner with an implied monopoly of all the colors of the spectrum. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166 [26 S.Ct. 425, 50 L.Ed. 710]; Lufkin Rule Co. v. Master Rule Mfg. Co., 40 F.2d 991, 17 C.C.P.A., Patents, 1227; In re Johns-Manville, Inc., 55 App.D.C. 142, 2 F.2d 944; Samson Cordage Works v. Puritan Cordage Mills, [6 Cir.] 211 F. 603 [L.R.A., 1915F, 1107]; In re Gotham Silk Hosiery Co., Inc., 57 App.D.C. 266, 20 F.2d 282.

Additionally, the majority stressed the nature of appellant's design, going so far as to question whether it is a "design" at all. Rather, in their opinion,

   \* \* \* the circular shape is dictated by the nature of the goods. That is to say, coloring around the hub of a computer reel necessarily takes on a circular shape and all that means is that a part of the goods has been colored, not that a design has been achieved. See Radio Corporation of America v. Decca Records, Inc., et al. [51 F.Supp. 493], 58 USPQ 531 (DC NY, 1943).

The majority did not specifically address itself to the examiner's second rationale, insufficient proof of customer recognition, but the solicitor has found some possible reference to it in their opinion and has argued that the examiner's refusal to register on that ground is still in the case. For purposes of this opinion, we have assumed that it is.

The dissenting member of the board said it was his "firm belief" that an applicant is not "bound, as a matter of law, to restrict its application to a particular color if its variety of contrasting colors are applied in an arbitrary design or arranged in a particular way." (Footnote omitted.) This belief he based on A. Leschen & Sons Rope Co. v. American Steel & Wire Co., 55 F.2d 455, 19 CCPA

---

2. Sic; appellant points out that his application does not specify the material from which the ring is made.

851 (1932), the holding of which he stated to be that "where a specific color is used on an article of goods in a particular design it affords the user thereof property rights as against another party who merely uses a different color in the same manner or design." (Footnote omitted.) If the applicant, by prior use of the design on computer tape reels in blue, could prevent registration of the identical design for use on computer tape reels in red, why should it be prevented from registering its colored design without specifying a particular color, especially if, in fact, it uses the design in a plurality of colors? As to the second issue, the dissenting opinion says:

> On the record in this case, I would conclude that applicant has made a prima facie showing that its contrasting color design is arbitrarily applied and does in fact identify its goods and distinguish them from the goods of others.

It notes that application of the examiner's (and the majority's) reasoning in cases where the applicant in fact uses as a trademark a design which may appear in various colors on different ones of the applicant's products,

> * * * would necessarily result in the requirement that applicant file a series of trademark applications for each of its contrasting color designs in lieu of seeking protection thereof in one application. I believe that such a requirement is not prescribed as a matter of law where, as here, applicant's use and promotion of its mark is not directed to any one color.

The solicitor picks up this last point, implying that the trouble with appellant's application is that it is seeking "a monopoly of colors in a design * * * in a single registration * * *." Presumably, if the applicant had filed eight separate applications on the design in the eight colors which it has stated it is now using, the solicitor would have thought each separate application registrable upon submission of proof that the design was recognized as a trademark by those in the field.

## OPINION

■■ We agree with appellant and the dissenting member of the board that there is no reason why a registration may not be obtained which covers the use of the mark regardless of its color. Indeed, Trademark Rule 2.51(d) provides for an analogous situation: "If the application is for the registration only of a word, letter or numeral, or any combination thereof, not depicted in special form, the drawing may be the mark typed in capital letters on paper * * *." Clearly, such a registration envisions use of the mark not only in any *form* of type but in printing in "all the colors of the spectrum," to quote *International Braid,* supra. It seems to be well established that a single registration of a word mark may cover all of its different appearances, potential as well as actual. Similarly, it seems to us, there is no reason why an applicant should not be able to obtain a single registration of a design mark covering all the different colors in which it may appear, that is to say, not limited to a particular color.

It must be acknowledged that what we have just said is contrary to some things this court said in the *International Braid* case. That case involved an opposition by the owner of a closely similar mark to that sought to be registered, whereas here we have an ex parte rejection on the theory the ring design does not function as a trademark. In the *International Braid* case this court held that the opposition should be sustained, saying:

> * * * a monopoly of all colors, which registration [to appellant-applicant] implies, *would deprive appellee of the right to the use of its registered mark* with its threads of blue; or, if the two marks were concurrently used by the competing parties in ladder web [venetian blind tape] made of blue tape, *confusion and mistake* in the mind of the public *would likely result.* [Emphasis ours.]

This appears to have been at least a primary ground of the court's decision and

quite sufficient reason therefor. Opposer also appears to have argued that applicant's mark, *as broadly described* with respect to color, was "devoid of trademark significance," leading the court into a discussion of precedents on the need for specifying a color. To the extent that what was said in that opinion is inconsistent with our decision here, we overrule it.

However, in so doing, we are careful to point out that we are *not* necessarily disagreeing with what was said in the opinions on which this court there relied. From the Supreme Court's "Leschen Rope" opinion, 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710 (1906), on which this court principally relied in the *International Braid* case, for instance, it is clear that it was the breadth and indefiniteness of the appellant's registration which led the court to hold it invalid. According to the description of appellant's trademark contained in its registration, "The trademark consists of a red or other distinctly colored streak applied to or woven in a wire rope." Of course the drawing which was a part of the registration showed the streak applied in a certain color (red) and in a certain way (with the strands), but the court reasoned that the written description "would be answered by a streak of any color painted spirally *with* the strand, longitudinally *across* the strands, or by a circular streak around the rope" and that therefore "a wire rope containing a streak of any description or of any color would be an infringement, and a manufacturer honestly desiring to distinguish his wire rope from that of the plaintiff's by difference in color might, by adopting a white streak running along the length of the rope across the strands, find himself an infringer, when his real object may have been to obtain a mark which would distinguish his manufacture from that of the plaintiff's." Here, the description of appellant's mark contained in its application is neither indefinite nor unduly broad. A competing manufacturer can ascertain from reading the description of the mark in appellant's application exactly what design appellant regards as his trademark and can govern its selection of its own trademark accordingly with no fear of inadvertent infringement. Similarly, while appellant may have pre-empted a very desirable trademark, that is often true, and there is no reason here, in contrast to the "Leschen Rope" cases, to suspect that appellant is somehow engrossing the field of available design trademarks for application to computer tape reels.

■ Nor are we persuaded that our decision here is contrary to what was said in the Decca Records case. There Judge Woolsey of the Southern District of New York held invalid an RCA trademark consisting of the use of red center labels on phonograph records, stating that

> * * * it cannot properly be contended that a colored round label, affixed to the circular centre of a circular disc record, is the use of color in the form of a design, as it must be to constitute a trademark. Cf. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 171, 26 S.Ct. 425, 50 L.Ed. 710. The circular shape of this centre is inescapable. All that has happened is that a functional part of the record has been colored, not that a design has been achieved.

Here, however, appellant's design is not the coloring of a "functional part" of the computer tape reels. It is the coloring of a narrow, annular band *mounted* on the front reel flange (which is a functional part) but itself having no functional purpose whatsoever, so far as the record shows. As such, it is a design which is potentially registrable as a trademark, and there is no evidence here, as there was in the *Decca* case, that others in the industry have previously used as mere ornamentation the same or very similar design, thereby destroying its capacity to serve as a trademark.

Turning to the second rationale for this rejection, we are likewise persuaded that the applicant has made a prima

facie showing that its contrasting color design does in fact identify the source of its goods to those in the trade. Compare In re General Tire & Rubber Co., 404 F.2d 1396, 56 CCPA 867 (1969). Applicant submitted to the examiner reprints of six different advertisements for its goods which had appeared in the magazine DATAMATION. In the letter accompanying these exhibits, appellant's attorney stated that "During the past year the applicant has spent approximately Thirty Thousand ($30,000.00) Dollars in advertising in the trade publication DATAMATION, of the type represented by the enclosed ads." Some of these advertisements promote others of applicant's goods as well as its computer tape reels, but each advertisement contains such statements as

> A ring of color around the hub of the reel identifies it as a quality reel with an aluminum winding surface from

> DATA PACKAGING CORPORATION

and

> Recognize them [i. e., appellant's computer tape reels] by the color-coded Saturn ring around the hub.

Later, in response to the examiner's second refusal of registration, appellant submitted the affidavits of two corporation officers "actively engaged in the purchase of reels for magnetic tape" stating that they were "familiar with the ring employed by Data Packaging Corporation on the front flange at the hub of its magnetic tape reels," that they knew "that the rings appear in a variety of colors," that they did "not consider the rings * * * to be mere ornamentations on the reels" nor did they know of anyone else who did, and that they recognized "the rings as indicating a source of origin [sic] for the magnetic tape reels which carry them."

■■ As the examiner pointed out no less than four times in his two-page answer, the two affidavits submitted by appellant "were practically identical in wording." No doubt they were both drafted by appellant's lawyer. However, in our view this circumstance detracts little or nothing from their sufficiency to make out a prima facie case of trademark recognition. Appellant's advertising clearly shows that it intended to develop trademark recognition of its color-coded rings, and the affidavits which it has submitted persuade us, absent any evidence to the contrary, that its design is indeed being recognized in the industry as indicative of source *or* origin with appellant.

This case appears to us to be analogous to In re LeBlanc Corp., 429 F.2d 989, 57 CCPA 1339 (1970), wherein we held to be registrable on the Principal Register, as a trademark for trumpets, a round medallion on the brace of the main tuning slide *regardless of the decoration on the medallion*. There was evidence, as there is here, that people recognized the particular *configuration* and *location* of the medallion as an indication of origin, apart from the decoration on its face, as they here recognize shape and location apart from color.

The decision of the board is reversed.

Reversed.