THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
January 17, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Powermat Inc.*[1]

_____

Serial Nos. 77715011 and 77715052

_____

Matthew R. Mowers of Brooks Kushman P.C. for Powermat Inc.

Jason Paul Blair, Trademark Examining Attorney, Law Office 104 (Chris Doninger, Managing Attorney).

_____

Before Kuhlke, Shaw, and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

On April 16, 2009, applicant Powermat Inc. applied to register two sound marks for "battery chargers" in International Class 9 on an intent-to-use basis pursuant to Trademark Act Section 1(b), 15 U.S.C. § 1051(b). After entry of an examiner's amendment, the sound in application Serial No. 77715011 is described as follows: "The mark consists of five short electronic chirps, lasting less than half a second, with each chi[r]p increasing slightly in pitch from the previous chirp." The

_____

[1] The applications were originally filed in the name of HPNA LLC, which subsequently changed its name to Powermat USA, LLC. The January 5, 2012 assignment from Powermat USA, LLC to Powermat Inc. is recorded in the Office Records at Reel/Frame Numbers 4692/0957.

description of the sound in application Serial No. 77715052 also was amended and reads as follows: "The mark consists of five short electronic chirps, lasting less than a half second, with each chi[r]p decreasing slightly in pitch from the previous chirp."

Following publication, notices of allowance for both applications issued on September 29, 2009, and applicant timely submitted the same specimen of use for both marks. The specimen is a commercial in which electronic devices are repeatedly placed onto and lifted up from applicant's wireless battery-charging mat. When a device is placed onto the charger, the ascending tones in application Serial No. 77715011 are heard; when a device is removed from the charger, the descending tones in application Serial No. 77715052 are heard.

The examining attorney refused registration on the ground that applicant's sounds were not inherently distinctive and therefore failed to function as marks pursuant to Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§ 1051, 1052, and 1127. Applicant timely appealed.

In requests for reconsideration filed June 30, 2011, as to both applications, applicant listed links to four of its commercials on YouTube for the purpose of demonstrating the "distinctive nature of the sounds and the related consumer awareness and focus of the sounds as source identifiers," stating: "Applicant is prepared to provide an electronic copy of each of the above-listed advertisements if the Examining Attorney is unable to evaluate the content of the advertisements from the links above." The examining attorney denied the requests for reconsideration as to both applications on July 29, 2011. The examining attorney

did not consider the YouTube commercials because "dated captures of those websites were not attached to the correspondence of record." Recon. Denial at 2.

On September 30, 2011, applicant filed its appeal brief for application Serial No. 77715052 and attached printouts of the YouTube.com pages where its commercials are posted. The same day, applicant filed a request for remand asking the Board to suspend the appeal and remand the application for the examining attorney to consider applicant's "properly verified Internet evidence," citing Trademark Manual of Examining Procedure (TMEP) § 710.01(b) (October 2012). Request for Remand, application Serial No. 77715052, at 1. Applicant submitted an appeal brief with the same attached printouts, as well as a request for remand, for application Serial No. 77715011 on October 2, 2011.

On October 12, 2011, the Board granted the request as to application Serial No. 77715052, and remanded the application to the examining attorney for consideration of "the additional evidence included in applicant's appeal brief." The request for remand was denied as to application Serial No. 77715011 on November 17, 2011.

On November 22, 2011, applicant filed "Applicant's Motion and Brief to Consolidate Appeal Proceedings" in both cases. In the body of that motion, which was the same for both applications, applicant also asked the Board to reconsider the denial of remand as to application Serial No. 77715011, stating: "The verifiable Internet based evidence of the Applicant's use of the sound marks in audiovisual advertisements to the general public contained in the hyperlinks remain active and

accessible for both the Examining Attorney's and Board's review." Motion to Consolidate at 3.

On November 30, 2011, the examining attorney denied reconsideration in application Serial No. 77715052 without referencing applicant's Internet evidence. On applicant's motion, the Board ordered the cases consolidated on January 9, 2012. The order did not address applicant's request for reconsideration of the Board's denial of remand in application Serial No. 77715011.

Evidentiary Issue

Before turning to the substantive issue on appeal, we first address the evidentiary issue concerning applicant's hyperlinks. It appears that applicant wanted the Examining Attorney (and the Board) to actually play the YouTube videos to hear the alleged distinctive nature of the sounds in context. There are two problems with applicant's evidence, however. First, we have made clear that providing hyperlinks to Internet materials is insufficient to make such materials of record. *See In re HSB Solomon Assocs., LLC*, 102 USPQ2d 1269, 1274 (TTAB 2012) (stating that "a reference to a website's internet address is not sufficient to make the content of that website or any pages from that website of record"); *Safer Inc. v. OMS Investments Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010) (noting that because of the transitory nature of Internet postings, websites referenced only by links may later be modified or deleted). The procedure for making printouts of Internet evidence of record is addressed in TMEP § 710.01(b) and the cases cited therein. The examining attorney's reference in the denial of reconsideration to this section and the need for "dated captures" addresses (1) the requirement that merely

4

providing a link is not sufficient and (2) the manner in which to submit screen shots or printouts of Internet materials. The examining attorney's reference to the requirement in Section 710 for "complete information as to the source or context" speaks to the need for attached printouts to include the URL and date on their face, or some other manner of verification. Thus, the remand in application Serial No. 77715052 only serves to make the printouts attached to the appeal brief of record and does not admit as evidence into the record any information that would only be obtained were the examining attorney to click on a hyperlink and view an audio or video file.

The second problem is that applicant apparently intended to have the examining attorney review not simply paper printouts, but rather videos posted on YouTube.com demonstrating use of applicant's sounds in its advertising. This exposes another flaw in applicant's proffer. To submit audiovisual files of its commercials as evidence, applicant should have either provided a CD, DVD, or videotape of the commercials, or followed the same procedure it used to submit "drawings" of its sound marks and its specimens of use: by sending them to TEAS@uspto.gov as email attachments. *See* TMEP §§ 807.09 and 904.03(f).[2] The examining attorney referenced this email procedure in his final Office action (issued December 30, 2010).

---

[2] As specified in TMEP §§ 807.09 and 904.03(f), such submissions must be in electronic files in .wav, .wmv, .wma, .mp3, .mpg, or .avi format and should not exceed 5 MB in size for audio files and 30 MB for video files. These procedures are also outlined on the USPTO website at http://www.uspto.gov/trademarks/teas/teas_faq.jsp. We note that one of applicant's commercials ("Dorm") apparently is of record as applicant's specimen. We further add that consideration of any additional commercials would not alter our decision.

Because applicant's request for remand was granted as to application Serial No. 77715052, the YouTube printouts attached to applicant's earlier-filed brief are part of the record in that application and we consider the printouts for whatever probative value they may have. Further, applicant's November 22, 2011, motion for reconsideration of the Board's denial of applicant's request for remand, to consider this evidence in application Serial No. 77715011, is granted to the extent that we have considered the printouts in that application as well.

## The Merits of the Refusal

It has long been recognized that sounds can function as marks in some instances, and indeed, sound marks have been registered on the Principal Register for more than 50 years. *See, e.g.*, *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1162 (1995) ("The language of the Lanham Act . . . says that trademarks 'includ[e] any word, name, symbol, or device, or any combination thereof.' Since human beings might use as a 'symbol' or 'device' almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive. The courts and the Patent and Trademark Office have authorized for use as a mark a particular shape (of a Coca-Cola bottle), a particular sound (of NBC's three chimes), and even a particular scent (of plumeria blossoms on sewing thread).") (citations omitted). As we have stated:

> That is, sounds may, under certain conditions . . . function as source indicators in those situations where they assume a definitive shape or arrangement and are used in such a manner so as to create in the hearer's mind an association of the sound with a service.

*In re General Electric Broadcasting Co.*, 199 USPQ 560, 563 (TTAB 1978).

6

In the decision *In re Vertex Group LLC*, 89 USPQ2d 1694 (TTAB 2009), however, the Board held that, like both color[3] and trade dress in the nature of product design,[4] sounds emitted in the course of a product's ordinary function can never be inherently distinctive and can only be registered on a showing of secondary meaning:

> When a sound is proposed for registration as a mark on the Principal Register, for goods that make the sound in their normal course of operation, registration is available only on a showing of acquired distinctiveness under [Trademark Act] Section 2(f). Examples of such goods would include products such as alarm clocks, appliances that include audible alarms or signals, telephones, and the alarm products of applicant.

*Id.* at 1700.

Our application of the holding of *Vertex* in *Nextel Communications, Inc. v. Motorola, Inc.*, 91 USPQ2d 1393 (TTAB 2009), is instructive. In relevant part, applicant Motorola sought to register an electronic chirp as a mark for cellular telephones. The record established that cellular telephones, including those manufactured by Motorola that emitted the chirp, were in the category of goods that make sounds in their normal course of operation. *Id.* at 1400. "In view thereof, there is no doubt that applicant's chirp, used in connection with cellular telephones, falls into the category of sounds that cannot be inherently distinctive and may only be registered upon a showing of acquired distinctiveness." *Id.* at 1401.

---

[3] *Qualitex*, 34 USPQ2d at 1163.

[4] *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1068-69 (2000).

Applicant does not dispute that its battery chargers emit the sounds for which it seeks registration in their ordinary course of operation. Instead, applicant argues that its applied-for sounds are not subject to our holdings in *Vertex* and *Motorola* because the sounds are inherently distinctive and in fact function as trademarks. Although it submitted no supporting evidence, applicant argues that it

> created the sound to be a unique and fanciful source identifier and not the mere byproduct of the operation or function of the goods. The six (6) [sic] note ascending[5] note pattern in the key of C was developed under contract by a professional composer for Applicant to create a sound pattern that would act as a distinctive source identifier. The composer created over twenty (20) unique sound patterns that were submitted by Applicant for consumer testing and approval prior to adoption by Applicant and was selected as a result of consumer testing.

Applicant's Appeal Brief, application Serial No. 77715011, at 2. Applicant states that the applied-for patterns of notes not only serve as inherently distinctive source identifiers for applicant's products, but also formed the basis for applicant's 2009 and 2010 marketing campaigns. *Id.* at 2-4. In fact, applicant argues that it has used its sound marks "as the primary source identifier in audiovisual marketing campaigns to the consuming public." *Id.* at 6.

We find the applied-for sounds to fall squarely within our controlling precedent in *Vertex* and *Nextel*. As noted, applicant does not dispute that its goods emit the sounds in their ordinary course of operation. In addition, the examining attorney submitted evidence with his final Office action of sounds emitted by other devices in association with battery charging. Those Internet screen shots state, for

---

[5] The appeal brief for application Serial No. 77715052 substitutes the word "descending."

example, that the Motorola XTS 2500 digital portable communication radio emits a "short-length, high-pitched tone that sounds like a chirp" to indicate a low battery. "Once you've charged the battery completely in a compatible charger, the chirp should automatically stop." Other screen shots reference "battery back up sirens" that make a "soft chirp" sound.

Under our precedent, applicant's advertising cannot change this result. Nor would evidence that the sounds were developed by a professional composer and consumer tested. Even if applicant's evidence regarding applicant's promotion of its sounds were considered the aural equivalent of "look-for" advertising, the success of such advertising could have been relevant only to whether registration was permissible pursuant to Trademark Section 2(f), 15 U.S.C. § 1052(f), by establishing that its sounds have acquired distinctiveness. But applicant has not asserted this claim. *See, e.g., In re Data Packaging Corp.*, 452 F.2d 1300, 172 USPQ 396, 399 (CCPA 1972); *In re AFA Corp.*, 196 USPQ 772, 775 (TTAB 1977). Applicant's arguments and evidence do not remove its sounds from the ambit of our holdings in *Nextel* and *Vertex* and the need to establish acquired distinctiveness. Without such showing, we find the applied-for matter is not inherently distinctive and therefore fails to function as a mark.

### Conclusion

*Decision*: The refusal of registration is affirmed in each application.

9