This Opinion is a
Precedent of the TTAB

Mailed: May 17, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Construction Research & Technology GmbH*

————

Serial Nos. 86433989 and 86434029

————

Salvatore Sidoti of Curatolo Sidoti Co LPA for
    Construction Research & Technology GmbH.

Marcie R. Frum Milone, Trademark Examining Attorney, Law Office 116,
    Christine Cooper, Managing Attorney.

————

Before Wellington, Kuczma, and Adlin,
        Administrative Trademark Judges.

Opinion by Wellington, Administrative Trademark Judge:

Construction Research & Technology GmbH ("Applicant") seeks registration on

the Principal Register of the marks **NP - - -** and **SL - - -** for "sealant compounds for

joints" in International Class 17.[1]

---

[1] Respectively, application Serial Nos. 86433989 and 86434029. The two applications were filed on October 24, 2014, based on an allegation of use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a).

The Examining Attorney refused registration of both marks under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, finding them to be "phantom" marks ineligible for registration.[2] Registration was also refused pursuant to Sections 1 and 45 on the ground that the submitted specimens do not show the applied-for marks in the drawings in use in commerce.

After the Examining Attorney made the refusals final, Applicant appealed both cases and filed requests for reconsideration, as part of which Applicant amended its descriptions of the marks as follows: "[t]he mark is comprised of the letters 'NP' [or 'SL'] and the variable designation '---', with a space between 'NP' [or 'SL'] and the variable designation '---'. The variable designation '---' represents up to three numeric digits."[3] The Examining Attorney denied reconsideration. We subsequently consolidated the two appeals.[4] The consolidated appeal is fully briefed.

DISCUSSION

Applicant argues that its description of its marks avoids any "phantom mark" issue. Specifically, Applicant asserts that "[b]ecause of the limited number of numeric combinations based upon a maximum of three numeric digits, a search for the

---

[2] "A 'phantom' trademark is one in which an integral portion of the mark is generally represented by a blank or dashed line acting as a placeholder for a generic term or symbol that changes, depending on the use of the mark." *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1514 n.1 (Fed. Cir. 1999).

[3] *See* TSDR entry "TEAS Request Reconsideration," dated Feb. 11, 2016 (Ser. No. 86433989) (quotation marks altered for clarity); TSDR entry "TEAS Request Reconsideration," dated Feb. 11, 2016 (Ser. No. 86434029) (quotation marks altered for clarity).

[4] *See* 10 TTABVUE (Board consolidation order). All TTABVUE citations are made to the docket record for application Serial No. 86433989.

applied-for mark will easily uncover the marks and therefore the applied-for marks adequately provide notice to other trademark users."[5] Applicant contends that its marks are circumstantially similar to marks in cases where either the Board or the U.S. Court of Appeals for the Federal Circuit, or its predecessor, accepted the variable component of marks.

As noted above, a "phantom" trademark includes a blank or dashed line signifying a changeable element that depends on the use of the mark. *In re Int'l Flavors*, 51 USPQ2d at 1515 n.1. Under the Trademark Act, however, "a trademark application may only seek to register a *single* mark." *Id*. at 1516. *See also* 37 C.F.R. §2.52; Trademark Manual of Examining Procedure (TMEP) §807.01 (Apr. 2017). A mark that contains a changeable or phantom element resulting in possibly more than one mark is generally refused registration. *In re Primo Water Corp.*, 87 USPQ2d 1376, 1378 (TTAB 2008). The Federal Circuit, our primary reviewing court, has articulated the policy underlying this rule:

> [T]he mark, as registered must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark. 'Phantom' marks . . . encompass too many combinations and permutations to make a thorough and effective search possible. The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

*In re Int'l Flavors & Fragrances Inc.*, 51 USPQ2d at 1517-18.

---

[5] 13 TTABVUE 6.

Although applications for marks containing phantom elements are usually refused registration as impermissible attempts to register multiple marks, Applicant argues there is no "per se" rule against phantom marks and that there have been situations where the marks were allowed to register because they would allow for adequate notice to other trademark users and the ability to conduct an effective search. Applicant points us to *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1813 (Fed. Cir. 2001), and *In re Data Packaging*, 453 F.2d 1300, 172 USPQ 396 (CCPA 1972).

In *In re Dial-A-Mattress*, the Federal Circuit reasoned that the phantom element (underlined herein for reference) in the mark **(212) M-A-T-T-R-E-S** was permissible because it comprised "an area code, the possibilities of which are limited by the offerings of the telephone companies." *See* 57 USPQ2d at 1813. In *In re Data Packaging*, the Federal Circuit's predecessor court held that a design mark consisting of a colored narrow, annular band mounted in a specific location on a computer tape reel was registrable even though there was no limitation to any particular color, because "the description of appellant's mark contained in its application is neither indefinite nor unduly broad. A competing manufacturer can ascertain from reading the description of the mark in appellant's application exactly what design appellant regards as his trademark and can govern its selection of its own mark accordingly with no fear of inadvertent infringement." *See* 172 USPQ at 398.[6] The TMEP also

---

[6] Applicant also cited to a non-precedential Board decision involving a design mark "consist[ing] of a contrasting color used on a stripe on the wiping element of an automotive windshield wiper blade." (Serial No. 76394238, July 20, 2006). The Board, in that decision,

provides that "a mark with a changeable element may be registrable if the element is limited in terms of the number of possible variations, such that the drawing provides adequate notice as to the nature of the mark and an effective § 2(d) search is possible." TMEP § 1214.01 (Apr. 2017). The same TMEP section further instructs, by way of example, that "a 'phantom mark' refusal would not be necessary for the mark T.MARKEY TRADEMARK EXHIBITION 2***, in which the asterisks represent elements that change to indicate different years."

Applicant's argument that the changeable or phantom element in the involved marks is similar or analogous to those in marks that were deemed registrable does not pass muster, when measured against the underlying policy for the rule against registering phantom marks. With regard to the applied-for marks, one is left to guess not only what combination of "up to three digits"[7] will be used but also what permutations of those combinations will be used, and thus as the Examining Attorney points out there are at least 1,000 possible marks, which is nothing if not overly broad. Furthermore, it is unclear what significance, if any, each of the possible number combinations might have. For example, it remains unclear whether the

---

likened the design mark to that in *Data Packaging*, finding "the mark, as here, is what is set out in the application, a contrasting stripe," and was not "an unregistrable phantom mark." 16 TTABVUE 11-12 (Serial No. 76394238). Board decisions which are not designated as precedent are not binding on the Board, but may be cited and considered for whatever persuasive value they may hold. *In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A.*, 109 USPQ2d 1593, 1596 n.6 (TTAB 2014); *see also* Trademark Trial and Appeal Board Manual of Procedure (TBMP) §§ 101.03, 801.03, and 1203.02(f) (Jan. 2017).

[7] Even though the drawing of the mark, not the mark description, controls what the mark is, *see* 37 CFR § 2.52, TMEP § 807.02, we accept for purposes of this appeal that the three hyphens are limited to three or fewer numeric digits.

numbers that follow NP or SL, given the context of the goods, are intended to, or could, represent the number of a particular series or version of a product, a physical characteristic or something else of utilitarian significance to the potential consumer. Because the marks' possible range of meanings is not readily clear from the context, the applied-for marks are also indefinite. That is, Applicant is seeking to register multiple marks and the public cannot predict what marks will be covered by any resulting registrations. In sum, by way of the phantom element in each of the two applied-for marks, Applicant is improperly seeking to register not two, but over two thousand different marks and, in each case, this would be in violation of the one mark per application requirement of the Trademark Act and would run counter to the policy underlying the rule against registering phantom marks.

The marks at issue here contrast sharply with the mark in the already-discussed *Dial-A-Mattress* case. In that case, it was clear *from the drawing of the mark itself* that the phantom element represented the telephone area code portion of a mark comprising a telephone number set forth in part mnemonically. The public is not left guessing the significance of the missing information and any change in area code would have no impact on that mark's overall meaning or commercial impression. Thus, although Applicant is correct to the extent that the missing information in its marks consists of up to three digits and could theoretically have the same number of combinations and permutations as a three-digit telephone area code, the missing information in Applicant's applied-for marks could be much more wide-ranging than

the number of actual area codes in use and could be interpreted differently, depending upon the context and what – and how many – digits are being used.

Similarly, given the unique nature of the design mark at issue in *Data Packaging*, that decision does not aid us in determining the registrability of Applicant's applied-for marks. As explained above, the design mark at issue in *Data Packaging* was described with sufficient definiteness and the number of potential marks meeting the description was not overly broad so that competitors were on notice and could govern the selection of their own marks accordingly. Here, Applicant's applied-for marks are not circumscribed in any fashion other than the fact that each could encompass over 1,000 permutations which would have only two letters in common with each other. As the Federal Circuit in *International Flavors* stated, the phantom element cannot "encompass too many combinations and permutations to make a thorough and effective search possible" so that there is not adequate notice to competitors and the public. *In re Int'l Flavors & Fragrances*, 51 USPQ2d at 1517. Here, we find that if Applicant's marks are allowed to register, there would be insufficient constructive notice to the public regarding the extent of protection that should be accorded to these marks, and the USPTO would be unable to adequately fulfill its duty to conduct searches and determine registrability of these marks.

For these reasons, we find Applicant's proposed marks contain impermissible phantom elements and must be refused registration. We therefore affirm the refusals on the ground that, in each application, Applicant seeks to register more than one mark in violation of Trademark Act Sections 1 and 45.

In view of our affirmance of the phantom mark refusals, we need not reach the refusal involving whether the submitted specimens show the applied-for marks in the drawings in use in commerce.

**Decision**: The refusals to register Applicant's applied-for marks are affirmed.