This Opinion is a
Precedent of the TTAB

Hearing: March 15, 2018                                          Mailed: August 16, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Society of Health and Physical Educators*

_____

Serial No. 87107590

_____

Darle M. Short of Oliff PLC,
    for Society of Health and Physical Educators.

Kevin M. Dinallo, Trademark Examining Attorney, Law Office 107,
    J. Leslie Bishop, Managing Attorney.

_____

Before Kuhlke, Bergsman and Lynch,
    Administrative Trademark Judges.[1]

Opinion by Bergsman, Administrative Trademark Judge:

Society of Health and Physical Educators ("Applicant") seeks registration on the

Principal Register of the mark SHAPE XXXX (in standard characters) for the goods

and services listed below:

> Printed materials directed to educational association
> members who are educators and education administrators,

---

[1] Judge Masiello sat on the panel at the oral argument. He has since retired, and Judge Kuhlke has been substituted for him on this decision. The change in composition of the panel does not necessitate a rehearing of the oral argument. *Hunt Control Systems Inc. v. Koninklijke Philips Electronics N.V.*, 98 USPQ2d 1558, 1560 (TTAB 2011); see also *In re Bose,* 772 F.2d 866, 227 USPQ 1, 4 (Fed. Cir. 1985).

namely, educational journals in the fields of health education, physical education, recreation education, sports education and dance education, in Class 16;

Clothing, namely, shirts and t-shirts, in Class 25; and

Education services for educational association members who are educators and education administrators, namely, conducting educational seminars, conferences, lecture programs and workshops, all in the fields of health education, physical education, sports education and dance education; providing information to educational association members who are educators and education administrators in the fields of health education, physical education, recreation education, sports education and dance education, in Class 41.[2]

In the application, Applicant included the following "miscellaneous statement," as amended:[3]

The "XXXX" in the mark denotes the unabbreviated name of a state of the United States and Puerto Rico.[4]

---

[2] Application Serial No. 87107590 was filed on July 18, 2016, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as July 2015 for all the classes.

[3] Pursuant to Section 808.01 of the TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") (October 2017), "the examining attorney must require a description of the mark if: … the mark appears in standard characters, but an element of the mark is unclear or ambiguous." As discussed below, we take this statement to be Applicant's description of the mark in light of the inherent ambiguity of what XXXX signifies.

[4] May 19, 2017 Request for Reconsideration (TSDR 1). Citations to the record in the TSDR database are to the .pdf format.

Based on the specimens and Applicant's statement in its May 19, 2017 Request for Reconsideration that "Applicant proposes substituting the following for the 'XXXX' of the drawing: '[unabbreviated name of a state of the United States or Puerto Rico],'" Applicant inadvertently amended the "miscellaneous statement" to read "the United States and Puerto Rico" rather than "the United States or Puerto Rico." (TSDR 6). Given the clarification, we do not share the Examining Attorney's interpretation of the "XXXX" as including multiple state names. Examining Attorney's Brief (10 TTABVUE 4).

A specimen submitted for the goods in Class 16 and displaying the mark is set forth below.



The Trademark Examining Attorney refused registration of Applicant's mark under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the ground that the subject matter sought to be registered is a phantom mark that constitutes more than one mark. "A 'phantom' trademark is one in which an integral portion of the mark is generally represented by a blank or dashed line acting as a placeholder for a generic term or symbol that changes, depending on the use of the mark." *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1514 n.1 (Fed. Cir. 1999). Registration was also refused pursuant to Sections 1 and 45 of the Trademark Act on the ground that the specimens do not show the applied-for mark in the drawing in use in commerce.

Under the Trademark Act, "a trademark application may only seek to register a *single* mark." *Id.* at 1516. *See also* Section 1(a)(1) of the Trademark Act, 15 U.S.C. § 1051(a)(1) ("The owner of a trademark used in commerce may request registration of its trademark on the principal register … by … filing … an application and a verified statement in such form as may be prescribed by the Director"); Trademark Rule 2.52, 37 C.F.R. § 2.52; TMEP § 807.01. A mark that contains a changeable or

phantom element resulting in more than one mark must be refused registration. *In re Primo Water Corp.*, 87 USPQ2d 1376, 1378 (TTAB 2008). The Court of Appeals for the Federal Circuit, our primary reviewing court, has articulated that one policy underlying this rule is that a registration must function to provide notice to potential users of the same or a similar mark.

> [T]he mark, as registered must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark. "Phantom" marks … encompass too many combinations and permutations to make a thorough and effective search possible. The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

*In re Int'l Flavors & Fragrances Inc.*, 51 USPQ2d at 1517-18. *See also* Trademark Act Section 22, 15 U.S.C. § 1072 ("Registration of a mark on the principal register … shall be constructive notice of the registrant's claim of ownership thereof …"). In short, an applicant is limited to a single mark in an application.

With respect to whether the drawing of the mark — here, the typewritten terms SHAPE XXXX — provides adequate notice to the public as to the nature of the mark to facilitate effective searches, the description of the mark may be used to assess the intended breadth of the proposed mark. *See In re Data Packaging Corp.*, 453 F.2d 1300, 172 USPQ 396, 398 (CCPA 1972) (description deemed "neither indefinite nor unduly broad," such that "[a] competing manufacturer can ascertain from reading the description of the mark in appellant's application exactly what design appellant regards as his trademark and can govern its selection of its own trademark

accordingly with no fear of inadvertent infringement.");[5] *see also* TMEP § 808.01 ("the examining attorney must require a description of the mark if: … the mark consists of characters from the standard character set …, but the characters are displayed in a manner that affects the meaning or significantly contributes to the overall commercial impression of the mark.").

Assessing whether registration of a mark with a changeable element is permissible depends on whether the various possibilities represent a *single* mark. For example, in *Int'l Flavors & Fragrances*, 51 USPQ2d at 1517, the Court of Appeals for the Federal Circuit found that the proposed mark violated the one mark per application requirement where the application stated that the variable element "XXXX" "indicated 'a botanical or extract thereof, to wit: 'flower', 'fruit', 'yellow sunset orchard', 'osmanthus', 'fragrance', 'raspberry' and the like," because the variable element encompassed too many combinations and permutations to make constructive notice meaningful. Similarly, in *In re Constr. Research & Tech. GmbH*, 122 USPQ2d 1583 (TTAB 2017), the marks NP - - - and SL - - - ,  in which the variable element "represents up to three numeric digits," were unregistrable phantom marks in part because the possible range of meanings that could arise from the digits was unclear:

---

[5] In *Data Packaging Corp.,* the refusal was based on the alleged failure of the applied for designation to function as a trademark under Section 1 of the Trademark Act, not that the application sought registration for more than one mark. In that case, applicant described its mark as "a narrow annular band mounted on the front [of a computer tape] reel, adjacent to and concentric with the hub of the reel, in a color which contrasts with the reel flange." *Id.* at 396. The Court held that the mark is a design that covers all the different colors in which it may appear, "that is to say, not limited to a particular color." *Id.* at 397. Thus, the mark description in *Data Packaging Corp.* involved a single design that could appear in various contrasting colors.

> Furthermore, it is unclear what significance, if any, each of the possible number combinations might have. For example, it remains unclear whether the numbers that follow NP or SL, given the context of the goods, are intended to, or could, represent the number of a particular series or version of a product, a physical characteristic or something else of utilitarian significance to the potential consumer. Because the marks' possible range of meanings is not readily clear from the context, the applied-for marks are also indefinite. That is, Applicant is seeking to register multiple marks and the public cannot predict what marks will be covered by any resulting registrations.

122 USPQ2d at 1587.

On the other hand, the Court of Appeals for the Federal Circuit found the mark 1- 888-M-A-T-R-E-S-S for "telephone shop-at-home retail services in the field of mattresses" was the legal equivalent of the mark (212) M-A-T-T-R-E-S, in which the term (212) was defined as a changeable element.[6] The Court held that "it is apparent in the present case that the missing information in the mark is an area code, the possibilities of which are limited by the offerings of the telephone company." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1813 (Fed. Cir. 2001) ("*Dial-A-Mattress I*").

Subsequently, in a different appeal to the Board by Dial-a-Mattress, the Board reversed the refusal to register 1-800-MATTRESS, with "800" appearing in dotted lines and a statement that "the drawing is lined to indicate that the area code will change." *In re Dial-A-Mattress Operating Corp.*, Serial No. 76290744, 2004 WL

---

[6] The court also found "the difference in spelling between 'M-A-T-R-E-S-S' and 'M-A-T-T-R-E-S' is immaterial."

1427390, at *1 (TTAB June 15, 2004) (nonprecedential) (*"Dial-A-Mattress II"*).[7] In that case, the Board found that area codes are "devoid of source-identifying qualities." *Id*. at *3. The Board thus found that the mark 1-800-MATTRESS (with the "800" appearing in dotted lines to indicate that the area code may change) is materially distinguishable from the impermissible phantom mark appearing in *International Flavors*, saying:

> It is immediately apparent that the phantom portion consists of a three-number combination which is an area code. There is no ambiguity. It is a telephone mnemonic.

*Dial-A-Mattress II*, 2004 WL 1427390, at *3. The Board thus found that, even with different area codes, the possible variations of the mark would be legal equivalents.

Together, these decisions teach that when an applicant seeks to register a mark with a variable element, we must decide whether the permutations of the variable element affect the commercial impression so as to result in more than one mark. Put differently, if such a mark is to be registered, the possible variations of the mark must be legal equivalents. *See Dial-A-Mattress I,* 57 USPQ2d at 1813 ("Although the registration of the '(212) M-A-T-R-E-S-S' mark is a 'phantom' mark, … '1-888-M-A-T-R-E-S-S' is the legal equivalent of the '(212) M-A-T-T-R-E-S-S' mark."); *Dial-A-Mattress II*, 2004 WL at 1427390, *4 (1- --- --- --- -MATTRESS was approved for

---

[7] Board decisions which are not designated as precedent are not binding on the Board, but may be cited and considered for whatever persuasive value they may hold. *In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A.*, 109 USPQ2d 1593, 1596 n.6 (TTAB 2014); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) §§ 101.03, 801.03, and 1203.02(f) (June 2017).

registration because, *inter alia*, the different variations of the mark were legal equivalents).

In assessing the commercial impression of any mark, a central issue is the distinctiveness of its component parts. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 189 USPQ 759, 764-65 (2d Cir. 1976) (categorizing terms as fanciful, arbitrary, suggestive, descriptive, or generic). Generally, a component that is fanciful or arbitrary in the context of the goods and services at issue tends to contribute substantial distinctiveness to the mark as a whole; a component that is suggestive, would typically contribute a lesser degree of distinctiveness; and a component that is merely descriptive or generic with respect to the goods or services is least likely to contribute distinctiveness to the mark. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 1060, 224 USPQ 749, 752 (Fed. Cir. 1985); *see also Magnaflux Corp. v. Sonoflux Corp.*, 231 F.2d 669, 670, 109 USPQ 313, 314 (CCPA 1956) ("It is well settled that, while the question of confusing similarity of marks is to be determined from the marks as a whole, it is also proper to note that if a part of the mark is descriptive in nature, and has little or no trade-mark significance, it cannot be regarded as dominant and will generally be given less weight than more arbitrary portions of the marks.") (citations omitted). Consequently, in a phantom mark in which the changeable elements are arbitrary or fanciful, it is correspondingly likely that the various permutations of the mark will result in different commercial impressions and therefore constitute different marks. In contrast, where the changeable elements are generic or merely descriptive, it is conceivable that the permutations of the mark may constitute a

single mark. However, there can be no hard and fast rule, because even generic and descriptive matter may contribute to the commercial impression of a mark in certain circumstances. *Cf. Earnhardt v. Kerry Earnhardt, Inc.,* 864 F.3d 1374, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017) ("Because EARNHARDT COLLECTION is a combination of two terms, the PTO must consider the mark 'in its entirety' rather than merely 'consider[ing] the mark as two separate parts.'") (quoting *In re Hutchinson Tech. Inc.,* 852 F.2d 552, 7 USPQ2d 1490, 1492 (Fed. Cir. 1988)); *In re Shell Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993) (because "marks must be considered in the way in which they are perceived by the relevant public," a disclaimer does not remove the disclaimed matter from the likelihood of confusion analysis) (citing *Nat'l Data Corp.,* 224 USPQ at 750 ("the descriptive or generic character of an expression which forms part of both marks under consideration is pertinent to the issue of likelihood of confusion")). In *Hutchinson,* the Court criticized the Board for having "never considered what the purchasing public would think when confronted with the mark *as a whole.*" 7 USPQ2d at 1492 (emphasis added).

Further,

> A mark with a changeable element may be registrable if the element is limited in terms of the number of possible variations, such that the drawing provides adequate notice as to the nature of the mark and an effective §2(d) search is possible. *Cf. In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 1347-48, 57 USPQ2d 1807, 1812-13 (Fed. Cir. 2001) (rejecting the argument that the mark (212) M-A-T-T-R-E-S is an unregistrable phantom mark, because, although 212 was displayed in dotted lines to indicate it was a changeable element, it was clear that this element was "an area code, the possibilities of which are limited by the offerings of the telephone companies"). For example, a

> "phantom mark" refusal would not be necessary for the mark T.MARKEY TRADEMARK EXHIBITION 2***, in which the asterisks represent elements that change to indicate different years. However, if the changeable element's potential significance and range of meanings is not readily clear from the context, and thus the public would be unable to determine scope of any resulting registration, refusal is appropriate. *See In re Constr. Research & Tech. GmbH*, 122 USPQ2d at 1586 (affirming a "phantom mark" refusal of the marks NP - - - and SL - - - , in which "- - -" represented up to three numeric digits, noting that the missing information in the marks is potentially wide-ranging and subject to different interpretations depending on the context).

TMEP § 1214.01.

The mark SHAPE XXXX, where XXXX is defined as the name of a state or Puerto Rico, has a large number of variations (*i.e.*, 51 possibilities). While the nature of the variable element is disclosed in specific terms in the application — a disclosure that would not appear on any registration certificate — that only confirms that this application is not for a single mark and that this variation would inhibit effective searching because the 51 geographic locations are not listed in any searchable portion of the application. For example, a third party interested in marks that include the term NEVADA, would not find Applicant's mark, because the term NEVADA does not appear anywhere in the searchable record.[8]

---

[8] Even if applicants were required to include, in the description of the mark, the names of all fifty states plus Puerto Rico, with the exception of sound, scent, or flavor marks which do not require drawings, the description of the mark field is not generally searched when looking for similar marks. Accordingly, each of the 51 place names would have to be entered into the pseudo mark field by the USPTO staff. *See* TMEP § 104 ("For some marks, the USPTO has added a pseudo mark to the search data to assist users in identifying relevant marks related to their search term.").

The crux of the issue, however, is whether all permutations of SHAPE XXXX, where XXXX is a state name or Puerto Rico, may be considered to be one mark (*e.g.*, whether SHAPE MICHIGAN is the same mark as SHAPE OHIO).

> A proposed mark is the "same mark" as previously-registered marks for the purpose of Trademark Rule 2.41(b) if it is the "legal equivalent" of such marks. A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark. Whether marks are legal equivalents is a question of law …. No evidence need be entertained other than the visual or aural appearance of the marks themselves.

*Dial-A-Mattress I*, 57 USPQ2d at 1812 (citing *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1868 (Fed. Cir. 1991) (to be legal equivalents, "the marks must create 'the same, continuing commercial impression'")).

Applying the foregoing standard to the facts of this case, we find that SHAPE XXXX is not one mark because the different permutations of SHAPE XXXX are not legal equivalents. Even though geographic terms are generally considered not to be inherently distinctive, they are capable of acquiring distinctiveness. *See, e.g., Boston Beer Co. v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 28 USPQ2d 1778, 1783 (1st Cir. 1993) ("secondary meaning has been established in a geographically descriptive mark where the mark no longer causes the public to associate the goods with a particular place, but to associate the goods with a particular source."); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 329 (SDNY 2010) ("It is well-settled that geographic terms, even when coupled with a generic term (e.g., 'New York City' plus 'triathlon'), are considered descriptive rather than generic."). Indeed, the Board has upheld the registration of trademarks and service marks that consist of

geographic locations for which the owner has demonstrated acquired distinctiveness. For example,

- *In re Am. Furniture Warehouse CO*, 126 USPQ2d 1400 (TTAB 2018) ("accepting Applicant's claim of Section 2(f)-in-part as to the wording AMERICAN FURNITURE WAREHOUSE");

- *In re Del E. Webb Corp.*, 16 USPQ2d 1232 (TTAB 1990) (reversing the refusal to register DEL WEBB'S NEVADA CLUB under Section 2(f) of the Trademark Act);

- *The All England Lawn Tennis Club (Wimbledon) Ltd. v. Creations Aromatiques, Inc.*, 220 USPQ 1069 (TTAB 1983) (sustaining an opposition based in part on opposer's ownership of a registration for the mark WIMBLEDON for wearing apparel registered under Section 2(f) of the Trademark Act);

- *Bekaert Steel Wire Corp. v. S.p.A. Officine Maccaferri Gia' Raffaele Maccaferri & Figli*, 196 USPQ 563 (TTAB 1977) (denying request for reconsideration challenging the validity of the registration for the mark MACCAFERRI RENO MATTRESS registered under Section 2(f) of the Trademark Act); and

- *Spice Islands Co. v. Gold Seal Co.*, 136 USPQ 311 (TTAB 1962) (holding that while the term "Spice Islands" was a synonym for "the Molucca Islands in the Malay archipelago" which were famous for spice production, opposer's mark SPICE ISLAND for herbs and spices had acquired distinctiveness and therefore allowed opposer to assert the mark as a basis for its opposition).

In such marks, the geographic term creates a source-indicating commercial impression. Moreover, the owner of a service mark consisting of or including CALIFORNIA in Applicant's field of business might consider the mark SHAPE CALIFORNIA to be objectionable, while it would not find another permutation of the mark, such as SHAPE NEW YORK, to be a matter of concern. The reason for this is precisely that the two marks are not legal equivalents because they create different commercial impressions when considered by a person having an interest in

CALIFORNIA-formative marks. *Cf. Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 USPQ2d 2036, 2038-39 (TTAB 1989), *aff'd*, 923 F.2d 869 (table), 17 USPQ2d 1726 (Fed. Cir. 1990) (AMERICAN MOBILPHONE and design is not the legal equivalent of AMERICAN MOBILPHONE PAGING and design because the addition of the word "Paging" "is more informative and hence legally different from AMERICAN MOBILPHONE and design.").

The variable element in Applicant's mark here (a state name or Puerto Rico), while geographically descriptive, alters the characteristics of the purported mark SHAPE XXXX, resulting in the commercial impression of multiple marks. The differences in the variable elements are more than minor variations or inconsequential modifications of the basic mark. For example, SHAPE MICHIGAN signifies educational services emanating from Michigan while SHAPE OHIO signifies educational services emanating from OHIO. The distinction is important in this case where geographic terms are capable of acquiring distinctiveness, which would further distinguish the marks. *Compare O-M Bread Inc. v. U.S. Olympic Comm.*, 65 F.2d 933, 36 USPQ2d 1041, 1045 (Fed. Cir. 1995) (OLYMPIC KIDS creates a different commercial impression than OLYMPIC, notwithstanding the disclaimer of KIDS and its lack of strong trademark significance); *Institut Nat'l des Appellations d'Origine v. Brown-Forman Corp.*, 47 USPQ2d 1875, 1895 (TTAB 1998) (for purposes of claim preclusion analysis, applicant's MIST AND COGNAC mark involved in a prior opposition is a different mark from CANADIAN MIST AND COGNAC because one mark includes the word "Canadian"); *Edison Bros. Stores, Inc. v. Brutting E.B. Sport-*

*Int'l GmbH*, 230 USPQ 530, 534 (TTAB 1986) (for purposes of a prior registration affirmative defense, the Board held that EB is materially different than EB SPORT INTERNATIONAL) *with Citigroup Inc. v. Capital City Bank Grp. Inc.*, 94 USPQ2d 1645, 1656 (TTAB 2010) (CAPITAL CITY BANK GROUP and CAPITAL CITY BANK engender the same commercial impression because "group" adds nothing to the origin-indicating significance of CAPITAL CITY BANK), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011).

And in addition to the differing significance of each of the possible phantom elements, it is obvious that each of them would lend a different appearance and pronunciation to the various permutations of Applicant's proposed mark. While this is perhaps true of all phantom marks to some degree, the variation in the appearance and pronunciation of the marks encompassed by Applicant's application are undoubtedly broader than that presented, for instance, by the three-digit variable area code at issue in *Dial-A-Mattress I* and *II*. Although there may be more area codes than the number of states plus Puerto Rico, the area codes were not only numerical and fixed in length, but also were part of a telephone number mnemonic, and so varied less in appearance and pronunciation. *See, e.g.*, *Dial-A-Mattress II*, 2004 WL 1427390, at \*3.

Finally, at the oral hearing, Applicant conceded that it had not used the applied-for-mark with all 51 variations of state names and Puerto Rico. This emphasizes the problem with Applicant's phantom mark application, as it has filed a use-based application where all the variations of the changeable element are not in use. *See Int'l*

*Flavors & Fragrances*, 51 USPQ2d at 1516 (the USPTO argued that the applications were written in sufficiently broad terms such that all of the potential variations of the marks covered by the "phantom" elements were not in use).

In view of the foregoing, we find that SHAPE XXXX comprises more than one mark and the refusal to register is affirmed.

In view of our affirmance of the phantom mark refusal, we need not reach the refusal involving whether the submitted specimens show the applied-for mark in the drawings in use in commerce. *See Constr. Research & Tech. GmbH*, 122 USPQ2d at 1586.

**Decision**: The refusal to register Applicant's mark SHAPE XXXX is affirmed.